# CHARLESTON

Rainey *v.* Freeport Smokeless Coal & Coking Co. *et al.*

Submitted June 16, 1905.   Decided November 28, 1905.

1. Mechanic's Lien.—*Account—Affidavit.*

   A substantial compliance with the provisions of the statute is all that is required in the account and affidavit filed for record, for the purpose of asserting a lien under section 7 of chapter 75 of the Code of 1899. (p. 386).

2. Decree of Reference—*Appeal.*

   A decree of reference founded upon the following expressed opinion: "The Court is of opinion that the plaintiff and the defendant George Shanabarger have mechanics' liens against the real estate owned by the defendant corporation, the Freeport Smokeless Coal and Coking Company, as alleged in the plaintiff's bill," but not otherwise adjudicating the principles of the cause, is not final or appealable. (p. 387).

3. Decree of Sale—*Amount of Property to Be Sold—Appeal—Reversal.*

   Where upon an appeal from a decree for the sale of real and personal property to satisfy liens, under section 7 of chapter 75 of the Code of 1889, the decree is reversed as to a lien which is in amount the larger part of all the liens decreed, and such lien held invalid, and the value of the property decreed to be sold does not appear,

it is proper to reverse that part of the decree directing the sale, and to remand the cause with directions to ascertain the amount of property necessary to satisfy the lien or liens not held invalid, and, in default of payment, to order a sale of such amount necessary. (p. 387).

Appeal from Circuit Court, Barbour County.

Bill by W. W. Rainey against the Freeport Smokeless Coal & Coking Company. Decree for plaintiff, and defendant appeals.

*Affirmed in part.*

Rehearing denied January 9, 1906.

ICE & ICE and FRED O. BLUE, for appellant.
J. HOP WOODS, for appellee.

COX, JUDGE:

W. W. Rainey filed his bill in equity in the circuit court of Barbour county against the Freeport Smokeless Coal & Coking Company, a corporation, to enforce a lien under section 7 of chapter 75 of the Code, against the property of said corporation. The account filed charges the said corporation with salary as its general manager for fifteen months, from August 1, 1900, to November 1, 1901, at $75 per month, aggregating $1,125. Certain credits are allowed, bringing the aggregate down to $955.50. Of this latter sum only $675 is claimed to be a lien for services rendered within nine months preceding the recordation of the account. The bill also sets up a laborer's lien on the same property, in favor of George Shanabarger, for a balance of $160.72, and makes him a defendant thereto. The cause was referred to a commissioner to ascertain liens, set-offs, etc. Upon the hearing of the cause upon the commissioner's report, a decree was entered declaring liens in favor of plaintiff, and defendant Shanabarger, as alleged in the bill, and giving a recovery therefor and for the balance of the plaintiff's claim which was not a lien, and directing sale of the real and personal property of said corporation to satisfy the liens and debt. From this decree the said corporation appealed.

The appellant complains of the decree and of the report of the commissioner, and of the overruling of its exceptions thereto, for a number of reasons, among which is that the commissioner erred in finding, and that the court erred in

decreeing, that appellant was indebted to either the plaintiff or Shanabarger. In other words, appellant contends that there was nothing due either of them for which a lien might be asserted. We have examined the evidence, and, while a decree based upon a commissioner's report should not be set aside unless plainly wrong, yet a consideration of the evidence and facts appearing compels us to say that this decree is plainly wrong so far as the plaintiff's claim is concerned. Before there can be a lien there must be a debt, a liability, something due or to become due, for which the lien may be asserted. It appears from the record that the appellant corporation was organized on the 16th day of August, 1900, by the plaintiff, living in Barbour county, and certain other persons living in Baltimore, Md. At the meeting for organization, plaintiff was elected a director and general manager. The other officers elected were Frank H. Sloan, president; J. P. Wade, vice president; George B. Wade, treasurer; George B. Clifton, secretary. All the officers except plaintiff resided in Baltimore, and all so elected were stockholders of the company. The appellant corporation began the development of certain coal lands conveyed to it, and continued to a limited extent the mining and shipping of coal until some time in May, 1901, when mining practically ceased; but little, if any, coal being shipped after that time until the following year. The mining and shipping of coal at no time was extensive, only about one hundred cars being mined and shipped from the time of the organization of the corporation until May, 1901. Some of the witnesses for appellant, the majority of whom are the officers thereof, testified that the purpose of the corporation was to develop the property for sale and not to mine extensively, and that the shipping mentioned was principally to prospective purchasers of the property.

Plaintiff claimed an express contract for wages as general manager, at the rate of $75 per month. In one part of his testimony he says that the express contract was made with W. A. Wade as agent of the appellant; but Wade in his testimony denies this, and it is shown conclusively that Wade had no authority to make such contract. In another part of plaintiff's testimony, he says the express contract was made with W. A. Wade, George B. Wade and Frank H. Sloan; but this is also denied, together with the authority of those

persons to make such contract.    In another part of his testimony, plaintiff says that the express contract was made with Frank H. Sloan, and this is likewise denied.    No express contract is shown by the evidence.    Plaintiff contends, however, that an implied contract is shown by proof of the performance of the services and the value thereof.    This contention is fully refuted by the evidence.    Three witnesses, W. A. Wade, attorney for the corporation, George B. Wade, its treasurer, and Frank H. Sloan, its president, testified positively and certainly that it was agreed on the day the corporation was organized, at a meeting of the board of directors at which plaintiff was present and when the general manager and other officers were elected, that they were to receive no compensation whatever for their services, and especially that it was understood and agreed with the plaintiff that he was to have no compensation as general manager of the corporation, and that a resolution was adopted by the board of directors in accordance with such agreement and understanding.    See *C. & O. Ry. Co.* v. *Deepwater Ry. Co. et al.*, 57 W. Va. 641.    Against this testimony, plaintiff testified that there was no such agreement or understanding as to him; and he also produced five monthly pay-rolls made out and sent by him to the appellant, upon one of which the following appears: "I would like to have $50 on salary to pay board and room rent."    Upon another appears the following item: "W. W. Rainey on time $100."    Upon another appears: "I am almost compelled to have $50 this day to meet some expenses.    Do the best you can."    Upon another the following item appears. "W. W. Rainey $75."    With the return of one of these pay-rolls to plaintiff, a letter was received by him, with a postscript signed by G. B. Clifton, in which he says: "We could only allow you $25 this month on account of scarcity of cash."    Plaintiff testified that of these demands upon the pay-rolls he received the $25 and $50 mentioned above.    W. A. Wade testified that the payments of these sums were made pursuant to an arrangement between plaintiff and him to have Wade, Sloan & Co., a different company from the defendant corporation, advance to plaintiff small sums to meet his board, which he was to repay to Wade, Sloan & Co. when the property of appellant was sold, and it is shown that these sums were advanced by checks of

Wade, Sloan & Co. The plaintiff allowed certain credits on his account filed for the lien, amounting to $169.50, which he did not claim were payments knowingly made by appellant on his salary, but credits or set-offs evidenced by checks given on appellant's funds under his control, in payment of his individual liabilities. It was not shown that the $25 above mentioned was included in said credits. The $50 above mentioned was certainly not included, and no item of credit for that amount appears. The account of the plaintiff filed and recorded was sworn to, and the bill in this cause was sworn to, both of which say in effect that the defendant corporation is indebted to the plaintiff in the sum of $955.50 after allowing all credits. Now, if the $50 and $25 had been actually received by plaintiff from appellant as payments on his salary as general manager, the plaintiff should have known this when he filed his account and affidavit and when he filed his bill in this cause. The fact that plaintiff did not allow the $50 and $25 as payments or credits on his claim, very strongly corroborates the theory that these items were not received by plaintiff from appellant on salary, but on some other account or for some other purpose. Plaintiff also testified to many demands for payment of salary, but these demands were denied by the testimony for appellant. Other facts and circumstances appear which in our judgment tend to corroborate the contention of the defendant that there was no indebtedness or liability to the plaintiff, but we deem it unnecessary to detail them. It seems plain to us that there was no implied contract, and no indebtedness or liability to the plaintiff from the appellant, by reason of the matters alleged in the bill, and therefore no lien to plaintiff.

What we have said does not dispose of the claim of defendant Shanabarger to a lien for work and labor. His account filed runs from June to November, 1901, including a small item in November. While it is true that plaintiff, being a stockholder and director of appellant, acted as its general manager without compensation, yet it is conceded by all the testimony that he had power and authority to employ labor for the corporation. He testified that he employed Shanabarger for the corporation as pit boss and for other labor, at the prices charged in his account, and made the

payments for the corporation therein credited.   Shanabarger testified to the same effect.    Some testimony was offered tending to show that Shanabarger had notice that the mines were ordered to be shut down in May, 1901, but this evidence does not show that he had notice that they were to be shut down permanently; and if he had such notice, he did not have any notice that the authority of the general manager to employ labor had been revoked, and he had a right to rely upon his contract of employment in that regard.   We think the account of defendant Shanabarger was proved.

Appellant objects to Shanabarger's claim for a lien because his account is not sufficiently specific.   The account shows that it is in favor of Shanabarger and against appellant.   It is composed of various items, specific in amount, and when taken with the affidavit we think that it reasonably appears that the necessary requirements of the statute have been complied with.   Substantial compliance with the provisions of the statute is all that is required in the account and affidavit, and the account and affidavit are to be considered together. We think no one could be misled as to the nature, purpose or amount of the account, although it could have been much more formal and full in its recitals.   It would seem to us that it is sufficient to give notice, which is one of the principal purposes of requiring the account and affidavit to be recorded.   *U. S. Blow Pipe Co.* v. *Spencer*, 40 W. Va. 698; Phil. Mech. Liens, section 350; *Wolvert* v. *Sunberry*, 81 Pa. 27.

Appellant complains of the overruling of its exceptions to the commissioner's report.   The first and second exceptions of appellant thereto are to the effect that the commissioner failed to report whether or not there were any credits or set-offs against said alleged liens, and failed to report whether or not there were any liens other than those to plaintiff and Shanabarger, as directed by the decree of reference.   The commissioner reported the liens of plaintiff and Shanabarger, but reported no other liens and reported no credits or set-offs other than those stated in their respective accounts.   Therefore, we must presume that the commissioner found neither other liens nor other set-offs, or he would have reported them.   The third and fourth exceptions of appellant to the commissioner's report are disposed of by what we have al-

ready said. The third exception should have been sustained as to plaintiff's alleged lien, and overruled as to Shanabarger's lien. The fourth exception should have been sustained.

The decree of reference to a commissioner contains the following expressed opinion of the court: "The Court is of opinion that the plaintiff and defendant Shanabarger have mechanics' liens against the real estate owned by the defendant corporation, the Freeport Smokeless Coal & Coking Company, as alleged in the plaintiff's bill." The decree of reference to a commissioner is founded upon this expressed opinion, but the decree does not otherwise adjudicate the principles of the cause. It is claimed by plaintiff that the part of the decree quoted was a final adjudication of the rights of the plaintiff and Shanabarger, and that it should have been followed by a decree of sale, and not by a decree of reference. This part of the decree was not a final adjudication of the rights of plaintiff and Shanabarger, but a mere recital, after a *prima facia* case had made proper a decree of reference. This part of the decree was merely interlocutory, and not appealable. Cases in point are *Cronin* v. *Hill*, 56 W. Va. 174; *Armstrong* v. *Ross*, 56 W. Va. 16.

The decree complained of directed the sale of the personal and real property of the appellant mentioned in the bill, without ascertaining its value or the kind or items of personal property. The statute provides that after a lien is established in favor of any of the creditors whose claims are presented the court shall order a sale of the property on which the lien is established, or so much thereof as may be sufficient to satisfy such claims, in like manner as in other suits in chancery. In this case it is necessary to reverse the decree so far as the plaintiff's claim is concerned, which is by far greater in amount than the lien of Shanabarger, thus leaving the amount for which appellant's property is liable comparatively small. It would seem inequitable to permit the decree for sale of all the property to stand when it does not appear that a sale of all is necessary to satisfy the Shanabarger lien, especially when there has been no ascertainment of the kind and amount of the personal property or of the value of either the real or personal property. The personal property alone may be more than sufficient; we cannot say.

For the reasons stated, so much of the decree of the circuit

court entered in this cause on the 31st day of May, 1904, as declared that plaintiff's claim alleged in his bill or any part thereof is a lien against the property of the appellant or any part thereof, and as gave a recovery in favor of the plaintiff against appellant for the amount of the claim alleged in the bill or any part thereof and for costs, and as directed a sale of the property, real and personal, of the appellant, is reversed; and so much of the report of the commissioner as finds a lien or an indebtedness in favor of the plaintiff against appellant, is set aside; and this cause is remanded with directions to ascertain the amount of property of appellant mentioned in plaintiff's bill necessary to satisfy the lien of defendant Shanabarger and the costs to which he may be entitled, and, in case of default in payment thereof, to order a sale of the amount necessary, and to be further proceeded with according to the principles herein announced and the rules governing courts of equity.

*Affirmed in part.*