# WHEELING.

HILL'S ADM'R *v.* MAURY *et al.*

Submitted June 26, 1882—Decided December 9, 1882.

(*SNYDER, JUDGE, Absent.)

1. A bill for a rehearing is properly dismissed, that shows no error in law in the decree sought to be reheard nor after-discovered evidence, which could not have been discovered before the decree was rendered by use of reasonable diligence.   (p. 170.)

*Counsel below.

2. Where the answer insists, that new parties should be made defendants, because they have become interested in the land with the defendants, which land is sought to be subjected to the payment of the purchase-money, unless it appears, that they were interested in the land, when the suit was brought, it is not error to decline to make them parties.  (p. 171.)

3. Where a number of persons purchased a large tract of land, and suit was brought to subject it to the payment of the purchase-money, and a deed is filed with the papers conveying the land to one of the defendants reciting therein, that said defendant had purchased the interests of the others, and in the decree for the sale of the land this deed is recognized as filed, and in the same decree a personal order is made against this defendant for a small balance of the purchase-money, and ordering the land to be sold, unless it was paid, and the said defendant files a bill of review, in which he does not object to the decree on this ground but virtually admits, that he alone is interested in the land, under these circumstances the personal decree against him is not to his prejudice.  (p. 171.)

Appeal from and *supersedeas* to two decrees of the circuit court of the county of Greenbrier, rendered respectively on the 27th day of May, 1878, and on the 1st day of June, 1880, in a cause in said court then pending, wherein John Hill's administrator was plaintiff and Robert H. Maury and others were defendants, allowed upon the petition of said Maury.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decrees appealed from.

The facts of the case are fully stated in the opinion of the Court.

*Richard L. Maury* and *W. W. Gordon* for appellant cited the following authorities:  25 Gratt. 475; Dan. Chy. Pr. §. 3 and note, 292, 293 and notes 7, 5; 17 How. 103; Dan. Chy. Pr. 246; 4 Min. Inst. Part I 150; Story Eq. Pl. § 72; 3 Gratt. 12–19; Calvert on Parties 116, 117; 2 Rob. Pr. 276, *et seq*; *Id.* 14–19; 8 Gratt. 281; 25 Gratt. 375; 4 Rand. 451; 25 Gratt. 840; 9 Gratt. 273; 9 Wall. 510; 3 Munf. 29; 32 Gratt. 74; 1 Leigh 80; 11 Leigh 559.

*Price & Preston* for appellee cited the following authorities: Code ch. 181, § 5; 18 Gratt. 365.

JOHNSON, PRESIDENT, announced the opinion of the Court:

This is a suit in equity in the circuit court of Greenbrier county to subject land to the payment of the purchase-money. The bill was filed in 1859, in the name of John Hill, plaintiff against R. H. Maury, Henry L. Brooke, James Hunter, Philip B. Dandridge and Samuel S. Thompson. By the contract exhibited it appears, that Hill sold to the said parties defendants " a certain tract of land, principally if not entirely, in Nicholas county, Virginia, which was granted to Jacob Skiles as a tract containing thirty-two thousand and ninety-seven acres then in Kanawha county; and which land was conveyed by said Skiles to Andrew Moore, and by his heirs conveyed to said John Hill. It is situated on Gauley and Twenty Mile creek and other waters. The sale was made subject to certain reservations for sales which said Hill had theretofore made, and for prior and conflicting claims, as shown upon a map now in the possession of the said Philip P. Dandridge, prepared and made out by Samuel A. Beckley, and a reservation on the map embracing the mill and made for the benefit of said Hill. Also the reservation of the timber upon one thousand acres above the saw mill of said Hill, commencing one and one-half miles above the saw mill on the south side of Twenty Mile creek, and to run with the creek and the top of the mountain between said creek and Gauley river for quantity. Upon the payment of the purchase-money, or upon receiving sufficient assurance of its payment according to contract, the said Hill binds himself and his heirs to make to the parties of the second part, a good and sufficient deed of conveyance with general warranty free from all incumbrances for the tract of land aforesaid, subject to the reservations aforesaid. The parties of the second part, on their part, agree and bind themselves to pay for said land fifty cents per acre, in the following manner, &c."

Not long after the bill was filed, all the defendants appeared and answered the bill, claiming payments and insisting, that the title to portions of the lands was not good. In the joint answer is this averment: " These respondents further answering say, that the respondent, Henry L. Brooke, has parted with all his interest under the contract with the complainant and, that the persons *now* interested in the said con-

tract are the other respondents, who are interested to the extent of one seventh each; and, that the Hon. R. M. T. Hunter, of the county of Essex, is also interested to the extent of one seventh; that B. W. Morris, of the county of Caroline, is likewise interested to the extent of one seventh and one fourth of another seventh; that Edward W. Morris and George Fleming, of the county of Hanover, are together interested to the extent of one fourth of one seventh; that A. M. Morris, of the county of Caroline, is interested to the extent of one fourth of one seventh, and that the Hon. Muscoe R. H. Garnett, of the county of Essex, is interested to the extent of one fourth of one seventh. These respondents therefore submit, that the said Hon. Robert M. T. Hunter, B. W. Morris, E. W. Morris, George Fleming, A. M. Morris and Muscoe R. H. Garnett should be made parties defendants in order that a proper and just decree may be pronounced."

It will be observed, that the answer does not state *when* the new parties acquired an interest in the purchase, nor is there exhibited with the bill any evidence of such interest.

On the 21st day of October, 1859, on motion of the complainant, the cause was referred to a commissioner, to state an account of the payments made by the defendants on said land, and on motion of defendants in the same order, special surveyors were appointed to go upon the land and survey the same, &c. The next order made in this cause, as the record shows, was made on the 15th day of April, 1869, which order recited the fact, that during the war the papers in the suit were lost or destroyed. The plaintiff was given leave to file a new bill, and the defendants had leave to demur to or answer the same, and then follows, " by consent of the parties, by their counsel, Thomas S. Robson, is appointed surveyor to execute the order of survey made in this cause, in lieu of Harvey Handley, who declines to act as surveyor." The said surveyor made his report in August, 1869, in which he ascertained, that there were forty thousand three hundred and seventy-two acres remaining in the tract.

On the 16th of October, 1869, the report of commissioner Harlow, which had been made in the cause, was committed

with the cause to James Withrow, who was appointed by the decree a special commissioner with directions to take such further evidence as the parties might offer, and to make such changes in the said report as the evidence might require. In his report, Commissioner Withrow adopts the report of Surveyor Robson, as to the number of acres remaining under the contract, and in accordance thereto, and says : "By this survey and report it appears, that the original amount in the survey was fifty-two thousand three hundred and sixteen acres and, that after deducting the reservations mentioned in contract ' A ', the true amount sold by Hill to Maury and others was forty thousand three hundred and seventy-nine acres. This survey and report is recognized by the parties as correct, and it is agreed that this shall be the amount or land chargeable to Maury and others to be paid for according to contract ' A. ' " This report shows, that there is due to Hill three hundred and ninety dollars and eighty-nine cents with interest from November 2, 1869. On the 18th day of October, 1870, on motion of plaintiff, the said report was recommitted to Commissioner Withrow, who made the same report as before, adding interest. On the 25th of November, 1871, the commissioner not having filed said last report, on motion of plaintiff, it was "ordered, that said commissioner receive and hear any further evidence, which may be laid before him by either party. But before he, the plaintiff, is to have the benefit of this order he is to pay the commissioner his costs."

The commissioner reports, "The following statement in addition to and in amendment of the former report made in the above named cause, is made at the request of counsel engaged in the cause. It appears from a paper now filed in the cause for the first time, that the proper time from which to calculate interest after the payment of the Monser and Milton debt was not fixed by your commissioner. After the above named debts were paid, the balance was to be paid in four annual installments, counting from the date of the contract, the 18th day of May, 1854. This balance was two thousand seven hundred and sixteen dollars and eighteen cents (see former report). This would give six hundred and seventy-nine dollars and four cents to be paid annually on

the 18th days of May, 1855, 1856, 1857 and 1858, and in the conduct of the account to follow they will be treated as bonds of these debts and the interest charged accordingly. This will materially alter the result." He then makes the statement on this basis and ascertains a balance due Hill of one thousand and ninety-nine dollars and ninety cents as of the 1st day of November, 1877.

On the 27th day of May, 1878, this report being unexcepted to was confirmed, and a decree entered, that said sum was a lien on said land and, that the administrator of John Hill, in whose name the cause had been revived, Hill's death being suggested, recover of Robert H. Maury, the said sum of money with interest and costs of suit, and if it was not paid within thirty days, a commissioner by said decree appointed, was ordered to sell said land to pay the same. The plaintiff filed a new bill, in which he alleged, that, R. H. Maury had purchased all the interest of his co-defendants. Hill and wife, filed a deed in the papers of the cause, which recites, that Maury had purchased the interest of his co-defendants, and this deed is recognized by the decree of May 27, 1878.

The defendant, Robert Maury, filed his petition in the cause, in which he set out the object, for which the suit was brought, the appointment of Surveyor Robson; that his survey was made in August, 1869; that he reported that the number of acres sold was forty thousand; that in October of the same year a commissioner reported the balance of the purchase-money due to be three hundred and ninety dollars and eighty-nine cents as of November 2, 1869; that this report was accepted as correct by all the parties and by their counsel, and so no order was made confirming it, probably because it had been agreed between petitioner and Hill, that the expense of the survey should be borne equally between them; that petitioner had paid it all, and that Hill's half exceeded the balance thus ascertained; that the cause so remained for seven or eight years without further proceedings, except that there seems to have been one or two unsuccessful attempts made by Hill to show, that what is known as the Manser debt, which petitioner had discharged, had not been properly calculated, but that so far as the balance due upon the sale itself was concerned, the report of the commis-

sioner was considered as full and final by all parties; that the matter thus remained until October, 1877, when the said Hill procured a supplemental report to be made by the commissioner, in which the interest was calculated upon a different basis, and by which he found the indebtedness to be one thousand and ninety-nine dollars and ninety cents with interest, instead of three hundred and ninety dollars as before reported; that this report was confirmed in May, 1878, by an order which directed, that unless the petitioner paid the said sum of money with interest from November, 1877, the special commissioner should sell the land to pay the same; that since the entry of said decree, petitioner had been paying said balance in installments and had reduced it to about seven hundred or eight hundred dollars.

He further states in said petition, that in 1871 he conveyed the land to trustees for certain purposes; that these trustees about a year before the filing of the petition, desiring to have a careful and accurate map prepared, employed M. F. Maury, a mining engineer and lawyer of eminence for the purpose; that he spent a great deal of time on the property, and has given his best care and attention to the work, availing himself of the most approved and accurate instruments, and petitioner is fully satisfied, that his calculation is correct; that the number of acres sold petitioner was thirty-five thousand six hundred and ninety-one instead of forty thousand three hundred and seventy-two, as reported by Robson, a difference of four thousand six hundred and eighty-one acres, which at the purchase-price of fifty cents per acre makes a difference of nearly two thousand five hundred dollars, and the purchase-money has been largely over paid; that as soon as petitioner first heard from Mr. Maury these facts, some four months prior to the filing of his petition, he at once notified Mr. Price, the commissioner, by advice of counsel, that he would not make any further payments, until it were shown, that Mr. Maury's calculations were wrong; that he proposed, that Maury and Robson should confer and compare their work and calculations, being satisfied that the latter would soon be convinced, that he had been in error; and that being very anxious to avoid litigation he offered, that no delay should occur in making payment, should he be found

in debt, as he would then pay it all at once; that petitioner wrote to Mr. Maury requesting him to confer with Robson at once; that Mr. Maury wrote to Mr. Robson several times but could get no answer; that several months had passed, and the commissioner had advertised the land for sale; that said decree of May, 1878, should be reviewed for two reasons: first, because it treats the whole balance found due as principal and directs, that the whole should bear interest from November, 1877, whereas only seven hundred and forty-three dollars and twenty-five cents should bear interest; second, because the discrepancy between the survey of Robson and that of Maury was of so serious a character and came to petitioner's knowledge only a few months before petition was filed; that while he had no personal acquaintance with Mr. Robson, yet knowing him to be the county surveyor and a sworn officer and believing him to be capable, he presumed that his work would be correctly done and had no reason to doubt, that it had been so done, until Mr. Maury, employed as aforesaid by others, detected his error; that the fact that Mr. Robson seems unwilling to revise his figures and calculations with Mr. Maury, confirms petitioner in his belief, that his work is not accurate, especially in view of the fact, that Mr. Maury was selected to do this work because of his known ability and accuracy and because of the peculiar facilities which he enjoyed for arriving at correct results in matters of this nature.

The prayer of the petition is, that said order of May, 1878, may be reviewed; that the account between the parties be re-stated in accordance with the quanitity of land actually sold; that he may have a decree of restitution of the amount of purchase-money overpaid; and that the sale be enjoined until this can be done, &c. The petition was sworn to.

The court entered an order on the 14th day of January, 1880, restraining the sale. The defendants to the petition answered denying the material allegations therein.

The deposition of M. F. Maury was taken, in which he says, that he made a survey of the tract in 1878 and 1879; that by his survey he found, that the lines by which R. H. Maury bought from John Hill contained thirty-five thousand six hundred and ninety-one acres. He says: "I calculated

my work by latitude and departure, the only absolute and accurate method and rule that has the advantage of showing just what is the error of a survey." He also says: "Robson's report calls for the divide between Bell creek and Sycamore waters and Twenty Mile creek waters as the boundary of Mr. Maury. If I follow his calls, I often leave the top of the ridge entirely and get down on the streams. Hence I discarded his lines and followed the natural courses called for. The same remark is true of the lines on the divide between Middle creek waters and Sycamore and Leatherwood waters."

On the 1st day of June, 1880, the cause was heard on a motion to dissolve the injunction upon the petition of R. H. Maury, depositions of witnesses, report made by M. F. Maury of a survey made by him, exceptions thereto and exhibits filed and was argued by counsel, whereupon the court dissolved the injunction and dismissed the petition with costs. From this decree and also from the decree entered in the cause on the 27th day of May, 1878, the defendant Maury appealed.

Did the court err in dissolving the injunction and dismissing the petition? The petition is in the nature of a bill of review. It must show error upon the face of the decree or newly discovered evidence, which could not by reasonable diligence have been discovered before the decree. This bill does neither. As far as we can see, there is no error in the decree of May 27, 1878. The survey of Robson, it is insisted, shows error upon its face. We cannot perceive it. That report was made August 4, 1869. Commissioner Withrow in his report says, that it was agreed by the parties, that it showed the correct number of acres sold. Why the cause was permitted to sleep until 1878, when Commissioner Withrow's last report was made, based on Robson's report of the number of acres sold, which report was confirmed without exception, is not shown by the record. We can see no error in Robson's report; and for nine years the parties to the suit could see none. It is not pretended in the petition, that the alleged error in Robson's survey and report, shown, as it is claimed, by Maury's private survey, could not have been discovered by the use of ordinary diligence.

But it is urged, that there is error in the decree of May, 1878, because it is against Maury alone and not against his co-purchasers as well. Maury was in court all the time as well as his co-purchaser. The deed filed by Hill and wife recites the fact, that Maury had purchased the interests of the others. The decree recognizes this deed. The petition of Maury virtually admits, that he alone is interested; and while the decree is in form a personal decree, yet it orders the land sold to pay the balance, if not paid in thirty days. It is very evident, that forty thousand acres of land would far more than pay the debt, which was a lien upon it. Under these circumstances we do not think it was an error to the prejudice of Maury, that there was not a personal decree against his co-purchasers. Besides, if the record was all here, it might show, what seems to be virtually admitted by Maury, that he did own the whole land at that time.

It is further urged, that it was error not to make parties to the suit those persons, who had purchased the interest of Henry L. Brooke. A sufficient answer to this assignment of error is, that it does not appear that those persons had any interest in the land at the institution of the suit. The answer says, that they are *now*, at the time of filing the answer, interested; but from all that appears, they may have been purchasers *pendente lite*.

It is further insisted, that the decree should have required the execution of a proper deed to the purchaser. There was on file with the papers of the cause, as appears by the supplemental record, a proper deed executed by Hill and wife to R. H. Maury, which follows the requirements of the contract, except that it is made to Maury alone, of which he certainly cannot complain, and the other defendants have made no complaint.

It is also insisted, that the decree ought to have deducted from the purchase the one thousand acres on which the timber was reserved. This would have been manifest error prejudicial to Hill, as it would have violated his contract.

It is also urged, that the commissioner, who took the account, on which the decree was founded, was not then a commissioner or officer of the court. The answer to this is, that he had been appointed to take the account, that it was

recommitted to him, and that he made no report except under the direction of the court.

It is insisted, that manifest error was made in the calculation of the number of acres. It took Maury nine years to discover this *manifest* error, and he discovered it then, only upon a private survey, made by disregarding the lines or many of them, as run by Robson. As far as legitimately appears by the record, no error was committed by Robson in his calculation.

We see no error in either the decree of May 27, 1878, or of June 1, 1880. They are respectively affirmed with costs, and damages, according to law.

JUDGES HAYMOND AND GREEN CONCURRED.

DECREES AFFIRMED.