# CHARLESTON

## RICHMOND *v.* RICHMOND.

### Submitted February 6, 1907.    Decided May 22, 1907.

1. PARTITION—*Pleading—Bill.*

    A bill for partition of land by heirs, alleging the death of their father intestate, his seisin of seven-eighths undivided interest therein and the remainder in the defendant, locating and describing the land, making parties and praying for partition, is sufficient upon which to found a decree adjudicating the principles of the cause.  (p. 207.)

2. APPEAL— *When Lies—Decree in Partition.*

    A decree of partition, whether by default or after full defense, which adjudges title in the parties, the interests they hold and that partition be made in the proportion defined by it, and leaves nothing to be done except for the commissioners appointed, in furtherance of its execution, to divide the land in kind if possible, or if not to report the fact to the court for decree of sale and distribution of the proceeds, adjudicates the principles of the cause and contains every element necessary to render it appealable. (p. 210.)

3. EQUITY—*Decree—Pro Confesso—Vacating.*

    Such a decree when *pro confesso* cannot be set aside or avoided by the defendant, after the term at which it is entered, except upon motion in the circuit court or the judge thereof in vacation, under section 5, chapter 134, Code, for errors on the face thereof for which an appellate court could reverse it; or by a bill of review pure and simple, or some pleading capable of performing the function of such a bill.  (p. 212.)

4. SAME—*Bill of Review.*

    A bill of review or petition for rehearing will lie only for error apparent on the face of a decree, for newly discovered matter of defense, or for newly discovered evidence of a defense known and pleaded; and such newly discovered matter or evidence will not, if known beforehand, be available after publication of the decree.  (p. 219.)

Appeal from Circuit Court, Raleigh County.

Bill by Hamilton Richmond and others against Alfred Richmond.    Decree for defendant, and plaintiffs appeal.

                    *Reversed.    Remanded.*

BROWN, JACKSON & KNIGHT and JOHN H. HATCHER, for appellants.

A. D. PRESTON, A. P. FARLEY and JOHN W. BALL, for appellees.

MILLER, JUDGE:

William Richmond about 1860 died intestate, seized of a tract of 104 acres of land in Raleigh county, leaving Sarah A. Richmond his widow and eight children as his heirs, to whom said land descended. His son W. L. Richmond subsequently acquired the interests of all said heirs except one sister, whose interest was purchased and has since been held by his brother A. B. Richmond, and thereafter in 1899 himself died intestate still possessed of such interests, survived by Laura A. Richmond, his widow, and four infant children, who at March rules, 1904, instituted this suit against A. B. Richmond for partition of said land.

The bill alleges the death of W. L. Richmond; his seisin of a seven-eighths undivided interest in said land and the remainder in the defendant, purporting to exhibit a plat and description thereof; the qualification of Laura A. Richmond as guardian of said infants; the susceptibility of said land to partition; possession of said land by the defendant and the enjoyment of the rents and profits thereof by him since the death of W. L. Richmond. The prayer of the bill is for partition in kind, or, if the property be not found susceptible thereof, sale and division of the proceeds, for an accounting of the rents and profits and for general relief.

By decree of July 25, 1904, after process was duly served upon the defendant and the cause regularly matured, the court, on the bill taken for confessed, decreed the parties to the suit owners in fee of the land, and a partition thereof in the proportion of ownership set out in the bill. The commissioners appointed were directed to assign to the plaintiffs their shares in one parcel by metes and bounds and the residue to the defendant, and to assign whatever permanent and valuable improvements might be found thereon to those making same without charging either of the coparceners with the value thereof, requiring them if the property be not found susceptible of partition to report such finding together with the facts upon which it was based. August 25, 1904,

the commissioners reported their partition in kind, whereby they assigned nine acres with the improvements thereon to the defendant, and the remainder to the plaintiffs.

At the following term, November 15, 1904, before any action of the court upon said report, the defendant for the first time appeared and entered his motion for a continuance, supported by an affidavit alleging that he had acquired his mother's dower in said land; that, by a verbal contract and part payment of the purchase money, he had purchased the entire interest of W. L. Richmond therein and had been put in possession thereof; that, as cause for not having sooner entered his appearance or made defense, he had, notwithstanding diligent search, failed to discover competent evidence of his contract, but had about three weeks prior to entering his appearance discovered material evidence in the nature of a letter from the deceased vendor to his brother Oliver Richmond in which said contract was recognized; but he made no exhibit of the alleged letter, nor filed other papers. In his affidavit he prayed that the decree against him *pro confesso* be annulled, and the partition, because of alleged inequality therein and insufficient allegation of title by the plaintiffs, be set aside. The court sustained the motion so made, and the cause was continued.

Thereafter, April 7, 1905, the defendant, over the objection of the plaintiffs, was permitted to file a petition praying annulment of the decree of partition, an answer, and sundry depositions on his behalf. In his petition, verified by his oath, after recital of the prior proceedings in the cause, he alleged that he was aggrieved by the decree aforesaid because it decided the respective interests of the plaintiffs and defendant in the land and its susceptibility to partition, decreed him entitled to only one-eighth thereof, and adjudged partition without allegation or proof showing the nature of the interest therein of the plaintiffs or W. L. Richmond; that he had used due diligence to ascertain the facts material to prove his purchase and did not discover the same until said decree was made, especially the evidence of Oliver Richmond and A. H. Redden; and he made his answer a part of said petition.

The answer so filed, which was not sworn to, alleged that, after having acquired the dower interest of his mother, he

"on the —— day of ————, 1899," purchased from the said W. L. Richmond his entire interest in said land for the sum of $700, $200 paid on the day of purchase and the residue covered by his two notes, one for $200 at two years without interest and the other for $300 at five years with interest at three per cent, which notes with interest he alleged he still owed, but was ready and willing to pay; that at the time of his alleged purchase he took and still held possession of the land; and that, by reason of his purchase of the interests of his mother and W. L. Richmond, he had placed valuable improvements thereon worth at least $700. He denies every allegation of the plaintiffs' bill, and prays his answer be treated in the nature of a cross-bill, the contract set up therein be specifically enforced and declared valid and binding on the plaintiffs, and a deed be made him for the land upon payment of the remainder of the purchase money with accrued interest.

The depositions accompanying said petition and answer had in view the object of supporting the defendant's alleged verbal contract with W. L. Richmond, the main reliance being upon two letters alleged to have been written by W. L. Richmond, November 19 and 21, 1899, to A. H. Redden and Oliver Richmond at Crow, W. Va., in answer to alleged written proposals to buy the timber on the land in controversy, W. L. Richmond replying that he had sold his interest in the land to A. B. Richmond and directing the parties to see him.

The plaintiffs replied specially to the answer of the defendant, denying his acquirement of his mother's dower, and any purchase by him of the interest of W. L. Richmond or possession thereunder. Laura A. Richmond, in her own right and as guardian of said infants, also answered the petition to rehear the said decree, averring sufficient allegation of title in the bill and that said decree is final, denying the sufficiency as evidence of the letters alleged by the defendant, and pleading the statute of frauds. The infants also answered said petition by their guardian *ad litem*.

At May rules, 1905, the plaintiffs filed an amended bill setting up and exhibiting the various conveyances whereby W. L. Richmond acquired his title, and alleging the statute of limitations in bar of the dower of defendant's mother;

14

that the defendant's possession of said land before and after the death of W. L. Richmond was that of tenant, he paying the taxes thereon as rent therefor; that his improvements thereon were made by virtue of such tenancy; and that, because of the increase in the value thereof, the defendant had long coveted said land, and had in furtherance of such purpose set up his alleged parol contract.  By agreement of parties, the answer to the original bill was so amended as to apply to the amended bill also, and the special replication so amended as to apply to the amended answer.

July 19, 1905, the court, upon full hearing, decreed the defendant not entitled to the relief sought, and dismissed his petition to rehear and his answer in so far as was in the nature of a cross-bill; whereupon he moved for a continuance, which motion was overruled.  Two days later the court permitted the defendant to file a bill of review to review the said decree of July 19th, based on an affidavit then filed, though sworn to July 17th, wherein he alleged that, observing a few days before a newspaper advertisement of an old deed or title bond, he inquired at the printing office and was there directed to J. R. Richardson, whom he at once called to see, on Sunday, July 16, 1905, when Richardson delivered to him a contract signed by W. L. Richmond, which proved to be the identical contract long before prepared and sent to W. L. Richmond for his signature and since lost, all the efforts of defendant to locate which had been unsuccessful; that Richardson at the same time delivered to him a portion of a letter signed by W. L. Richmond, and informed him that while carrying the mails he in 1899 picked up a quantity of mail lost from a mail sack run over by the train at or near Prince Station, among it said contract and letter, which he had not been able to identify or restore to any person who claimed them.

By decree entered July 24, 1905, the previous decree of July 19th denying the defendant affirmative relief, and the order filing said bill of review and affidavit, were set aside, the cause continued generally, and the parties given the right to take proof on the newly discovered evidence so set up in said last affidavit.  Much conflicting testimony was taken on the genuineness of the papers so produced; and on final hearing, December 22, 1905, the court adjudged the plaintiffs not

entitled to the relief prayed for, and the defendant entitled
to specific execution of said written contract and conveyance
thereunder from the said infants, upon the payment by him
"to the administrator of the estate of W. L. Richmond, de-
ceased, or to their attorney, J. H. Hatcher (not parties to
the suit) of the sum of $609 with interest," nothing in said
decree to affect the dower right of Laura A. Richmond in
said land.

It is pertinent to say that the decree of July 25, 1904, was
never, in terms at least, set aside or annulled; nor was the
bill of review, after the order of July 21st filing it was set
aside, ever thereafter re-filed; nor was there ever any issue
made up thereon, or reply or answer of the plaintiffs thereto;
nor was the cause by the last and final decree brought on to
be heard upon said bill of review.   By the decree of July
24th it was ordered that the "decree entered in this cause on
the 19th day of July, 1905, at the present term of this court,
denying the relief prayed for by the defendant in his answer
and adjudging the plaintiffs to be the owners of an undivided
7-8 interest in said land, be and the same is hereby set aside,
annulled and held for naught;" but the decree of July 19th
did not in fact adjudicate that the plaintiffs were the owners
of an undivided seven-eighths interest in said land; that de-
cree did nothing but deny and dismiss the defendant's claim
to affirmative relief.    Another point for emphasis in the
statement of the facts is, that on the very date of the decree
of July 19, 1905, denying to the defendant the relief sought
in his cross-bill, he already had in his possession and with-
held the affidavit sworn to two days before, which, after the
decree was prepared and directed to be entered, he tendered
to the court with exhibits in support of his motion for a
further continuance, which was overruled, and two days later
again appeared with a bill of review supported by the same
affidavit and exhibits.   Moreover, there was never any plead-
ing filed by the defendant, except the rejected bill of review,
in which any contract in writing between him and W. L.
Richmond was pleaded as the basis of affirmative relief.
This so-called bill of review, after reciting the former pro-
ceedings and the action of the court upon the defendant's
motion on July 19th to continue the cause, alleged, as the
only ground for rehearing said decree, the discovery by

Richardson of the alleged contract in writing and portion of letter and envelope enclosing the same, recited in said affidavit for a continuance. It nowhere seeks to review the original decree of July 25, 1904; and, the cause not having been matured or heard thereon, it need not further be noticed.

What have we, then, by way of pleading upon which to determine the questions presented by this appeal? First, we have the original bill, upon which the decree *pro confesso* was pronounced July 25, 1904; second, the motion of the defendant for a continuance November 15, 1904, supported by his affidavit with prayer for the annulment of the partition decree; third, the petition and answer of the defendant filed April 7, 1905, with special replication of the plaintiffs thereto; fourth, the amended bill of the plaintiff; and the answer of the defendant to the original bill treated as an answer thereto.

It is claimed by appellants that the decree *pro confesso* of July 25, 1904, adjudicated the principles of the cause, and was after the term ended beyond the reach of the trial court, except by the methods and upon the grounds provided by law. Does the decree adjudicate the principles of the cause? Whether a decree is appealable as adjudicating the principles of the cause has often been a troublesome question, depending for solution in each case upon the nature and character of the decree. The one here involved is certainly such a decree; it not only expresses the opinion of the court but it adjudges title in the parties, the interests they hold, and that partition be made in the proportions defined by it, and leaves nothing to be done except for the commissioners appointed, in furtherance of its execution, to divide the land in kind if possible, or if not to report the fact to the court for decree of sale and distribution of the proceeds. It thus contains every element necessary to render it appealable. *Hill* v. *Cronin*, 56 W. Va. 174; *Corley* v. *Corley*, 53 W. Va. 142, 145.

Clause 7, section 1, chapter 135, Code, gives right of appeal in a "case in chancery wherein there is a decree or order * * * adjudicating the principles of the cause." In *Gillespie* v. *Bailey*, 12 W. Va. 70, 81, this Court held that an appeal from a decree of 1869 brought with it for review

**a** prior decree of 1847, adjudging that the plaintiffs held in
severalty and were entitled to partition and appointing com-
missioners to assign to complainant his interest therein ac-
cording to quantity, quality and value.    This case was de-
cided in 1877.    In 1872, after adoption of the Constitution
of that year, the legislature enacted chapter 17, acts of 1872-
3, regulating appeals, writs of error and *supersedeas*, which
is in most respects the same as our present chapter 135; but
clause 7 of section 1 of said chapter 17 did not contain the
words "or adjudicating the principles of the cause."   These
words were not covered by the statute until 1877.   We do
not know that this state of legislation. had any effect upon
the decision of *Gillespie* v. *Bailey;* for at the date of the de-
cree appealed from and the date of the decree of partition,
and at the time of the decision of the case, the law in force
respecting appeals in chancery cases was the same as our
present statute.    JUDGE GREEN there bases his opinion upon
the ruling of *Cocke* v. *Gilpin*, 1 Rob. 28, in which Judge
Baldwin distinguishes an interlocutory from a final decree as
follows:   "Where the further action of the court *in* the
cause is necessary to give complete relief contemplated by
the court, then the decree, upon which the question arises,
is to be regarded not as final but interlocutory.   I say the
further action of the court *in* the cause, to distinguish it
from that action of the court which is common to both final
and interlocutory decrees, towit, those measures which are
necessary for the execution of a decree which has been pro-
nounced and which are properly to be regarded as adopted,
not *in* but beyond the cause, and as founded on the decree
itself, or mandate of the court, without respect to the relief
to which the party was previously entitled upon' the merits
of the case."  Notwithstanding this holding of JUDGE GREEN,
he says in reference to the decree itself:   "It settles the
principles of the cause, but did not decide all matters between
them; it did not decide how much was due from the plaintiff,
or from the defendant, which was the subject of contro-
versy."   Certainly, if a decree settles the principles of the
cause, it falls by force of the statute in that class of decrees
which are appealable and can only be reheard or reviewed in
one of the modes above mentioned.

Using this case as a point of departure, let us review some

of the subsequent decisions of this Court to determine the present status of judicial opinion on the subject of what are final or appealable decrees within the meaning of the statute. But before doing so we refer to *Harvey* v. *Bransom*, 1 Leigh 108, a suit for partition, in which Judge Carr says: "The objection taken at the bar I understand to be, not that the court had left any part of the case undecided, but that the decision was not final, because the commissioner of the court was still to go on and sell the lands, and because liberty was reserved to the parties to apply to the court to supersede him, or to appoint one or more commissioners to act with him or to succeed him, or to have the unsold lands divided among the parties in the proportions settled by the decree. But this does not seem to me to make the decree interlocutory."

In *Core* v. *Strickler*, 24 W. Va. 689, it is held that a decree which ascertains the amount and priorities of all debts sought to be established as liens, and orders the same paid out of real estate to be sold by commissioners, is such a final decree to which a bill of review will lie. The court, quoting from Judge Story, says: "A bill of review also lies only after a final decree; for the court may, if the decree be only interlocutory, afterwards and before a final decree, vary or rescind it. But a decree is final, in the sense of the rule, which finally adjudicates upon all the merits of the controversy, and leaves nothing further to be done but the execution of it."

In *Hoy* v. *Hughes*, 27 W. Va. 778, it was held that a decree in a suit to set aside a conveyance as fraudulent and subject the land therein conveyed to the plaintiff's debt which decrees that said conveyance is fraudulent as to the plaintiff's debt, ascertains the amount of said debt and orders the payment of the costs of suit, is appealable, although it does not decree the sale of the land, but refers the cause to a commissioner to report whether or not the rents and profits of the land will pay the said debt and costs within five years.

*Shirey* v. *Musgrave*, 29 W. Va. 131, says in reference to the introduction into the Code of 1849 of the words "adjudicating the principles of the cause:" "The principal object of this provision was, it seems to me, to make it less difficult to determine whether a particular decree was or was not appealable, the law prior to that showing that, when the right

to appeal from a decree existed only because the decree was a final one, it was very often difficult to determine whether or not the particular decree was final. It was supposed that it would be less difficult to determine when the decree 'adjudicated the principles of the cause' than it was to determine when the decree was final. The new phraseology might incidentally enlarge the jurisdiction of the supreme court somewhat, but that was not the object of the legislature." It is there held, as in *Hill* v. *Als*, 27 W. Va. 215, that a decree which does not adjudicate all issues presented by the bill, but determines one of them and reserves for future determination all other questions, is not a final or appealable decree.

In *Wagner* v. *Coen*, 41 W. Va. 351, a suit by one creditor to remove the trustee in a general deed of assignment for the benefit of all creditors and to appoint a receiver for causes alleged, the court appointed the sheriff receiver with directions to take charge of the property and turn it into money, and there was a decree overruling the motion to set aside the order of appointment. The question was whether the decree was an appealable one, the transfer of the property involving personal and not real estate; and it was held that the decree must be regarded as within both the reason and letter of the statute, and therefore in that particular case an appealable one, although ascertainment of the debts, distribution of the money, settlement of the receiver's account and the like still remained to be adjudicated.

In *Wood* v. *Harmison*, 41 W. Va. 376, the decree ascertained no certain debts, decreed none against the property, sold no property, settled no accounts, but left those matters until the return of the commissioner's report. JUDGE BRANNON says: "Clearly that deprives it of the character of a final decree; but does it still sufficiently decide the principles involved in the case to call for an appeal? I think it does, because it holds the conveyance to Mrs. Harmison from her husband void as to creditors with debts established by the record, and holds the land liable in her hands to their payment." In this connection he reviews a number of Virginia decisions, among them *Jameson* v. *Jameson*, 86 Va. 51, holding that a decree adjudicating the principles of a cause is appealable though leaving something yet to be done by the

court; and · *Lancaster* v. *Lancaster*, 86 Va. 201, the rule in which he says fits his case—namely, that an order adjudicating the principles of a cause is one which so far determines the rules or methods by which the rights of the parties are to be finally worked out that it is only necessary to apply these rules or methods to the facts, in order to ascertain the relative rights of the parties with regard to the subject matter of the suit. He says: "I think the Virginia cases hold that, if a decree only adjudicates one of the questions, that is enough. I prefer the rule of *Shirey* v. *Musgrave*, because it prevents repeated appeals from interlecutory decrees."

In *Deaton* v. *Mitchell*, 45 W. Va. 670, clause 9 of section 1 of chapter 135, giving writ of error or appeal in any civil case where there is an order granting a new trial or rehearing without waiting for such new trial or rehearing, was involved. JUDGE BRANNON says: "That decree adjudicated the principles of the cause, fixed the rights of the parties as to all matters in the case on which relief could be granted, and in so far final that it is an appealable decree, and will support a bill of review." Referring to clause 7 he further says: "Very clearly the same intention moved the enactment of clause 9, as respects new trial and rehearing, the one in law, the other in chancery; and that was to change the old law forbidding a writ of error or appeal till final judgment or decree, and, by anticipating them, allow a writ of error at law where a verdict is set aside, and a rehearing in chancery where there has been a decree settling the principles of a cause, so as to have the appellate court pass on the merits of the case without the delay and expense of new trial or rehearing. It was intended to let a party deprived of the jury's decision or the court's decision on the merits in his favor appeal at once. Strange that a decree so far final as to allow a bill of review or appeal should yet not be final enough to allow an appeal to test the right to grant a rehearing. This would defeat the manifest aim of the clause. If therefore a decree adjudicates the principles of the cause, so that it only remains to execute the adjudication, a rehearing gives right to appeal."

In *Hopkins* v. *Prichard*, 51 W. Va. 385, there was a controversy between attaching creditors of an individual member and firm creditors to subject to the payment of their re-

spective debts real estate standing in the name of the individual member. The suits were in chancery, and all were referred to a commissioner to report upon various matters referred to him, particularly to ascertain and report what property was owned by the individual members and by the firm subject to the payment of the debts. There was a decree upon the report of the commissioner and exceptions thereto that the property of the individual member of the firm attached had been purchased with his individual funds and not with social assets, and that there was no resulting trust in favor of the social creditors superior to the rights of the attaching creditors, and further that the commissioner carry out the former decree of reference in accordance with the views expressed in the decree. The question was whether this decree was interlocutory or final and appealable. The court, by Judge McWhorter, construing clause 7, section 1, chapter 135, Code, says: "While the decree does not contain a provision to sell the property, it certainly adjudicates the principles of the cause so far as Burks' rights are concerned, and as to him changes the title of the property, decrees it to be individually in R. H. Prichard," and therefore appealable.

The proper conclusion from all these cases is that any decree which does adjudicate the principles of the cause, although leaving much to be done by the court in the cause to carry the decree into effect, is appealable. As already indicated, Judge Green in *Gillespie* v. *Bailey* says that the partition decree there involved did settle the principles of the cause. Why then is such a decree not appealable? The purpose of the statute plainly was to permit review by appeal in such cases, before further trouble and expense incurred in carrying the decree into effect. The benefits of this provision may be well illustrated by the case at bar. If, as contended by the defendant, the plaintiffs had no equitable title to the land partitioned, and he had made defense, and the court had so decreed, that would have been the end of the matter; there would have been no reference to commissioners to divide and partition the land or further expense incurred; the plaintiffs would have gone out of court, taking nothing by their suit. Is not a decree in their favor adjudging title in them and that partition be made, as conclu-

sive as would have been a decree against them upon the defense the defendant would now interpose? We think there is no escape from this conclusion. We hold that the decree of July 25, 1904, was an appealable decree.

The decree then being so far final as to be appealable, there are two methods by which it can be reached. It being a decree by default, the first method, in case of error for which an appellate court might reverse it, is by motion in the circuit court or before the judge thereof in vacation, as prescribed by section 5, chapter 134, Code. Such motion is substantially a substitute for an appeal and must be as broad and efficacious as an appeal. *George* v. *Zinn*, 57 W.. Va. 15; *Ferrell* v. *Camden*, 57 W. Va. 401. The second method is by petition for rehearing or bill of review, for newly discovered matter, or for newly discovered proof of a defense known and pleaded. These latter remedies are regarded as cumulative of the first. *Bank* v. *Shirley*, 26 W. Va. 563; *Land, Coal & Oil Co.* v. *Davis*, 44 W. Va. 109. There is no distinction in effect between a decree by default or upon confession and one entered upon hearing after full defense. These remedies, however, are for the diligent. The law does not provide methods of relief for delinquent defendants; it exacts rigid compliance with the rules provided for avoiding a decree.

The first method indicated depends upon whether the appellate court could reverse the decree upon appeal. It could do so only for some error apparent on the face of the decree. The only error of this character suggested by the defendant worthy of consideration is that neither the bill nor the proofs show the source of title or the estate of W. L. Richmond or the interests of the plaintiffs in said land. There was no deraignment of title in the bill. But this Court has held that in a suit for partition formal deraignment of title is unnecessary; that it is only necessary to show how the parties became co-owners and are entitled to partition, describing and locating the land, alleging that the parties hold the same together and undivided. giving the quantity of the estate according to the fact and the undivided interest or part to which each is entitled, making parties and praying for partition. *Ransom* v. *High*, 37 W. Va. 839. The same rule obtains in Virginia. *Plunkett* v. *Bryant*, 45 S. E. 742;

*Martin* v. *Martin*, 27 S. E. 810.   In the latter case it is held that a bill for partition which alleges that the mother of the plaintiff was seized of the land, and that she having died intestate the plaintiff and defendants comprise her only children and heirs, sufficiently shows the title.   So we hold the bill in this case was sufficient upon which to found the decree, and that there was no error in the decree for which the circuit court could correct it or an appellate court reverse it.

The inquiry remains:   Has the defendant, by his various affidavits, petitions or (if it may be considered) his bill of review, presented a case entitling him to relief against the decree independent of any alleged error on its face?   Under our liberal rules of practice, which treat pleadings for what they really are and not what they call themselves, petitions and bills of review may possibly be treated one for the other as the case requires.   *Heermans* v. *Montague*. 20 S. E. 899; *Ambrouse* v. *Keller*, 22 Grat. 769; *Sands* v. *Lynhan*, 27 Grat. 291; *Rawlings* v. *Rawlings*, 75 Va. 76.   We pass by the answer of the defendant setting up a claim for affirmative relief, except in so far as it may be treated along with the affidavits and petitions filed to set aside the decree.   If it were otherwise sufficient as an answer or cross-bill setting up grounds for affirmative relief, it would certainly be defective for want of parties.   The administrator of W. L. Richmond would be a necessary party defendant.   *Nichols* v. *Nichols*, 8 W. Va. 175; *Hill* v. *Proctor*, 10 W. Va. 59; *Hinchman* v. *Ballard*, 7 W. Va. 152.

If not for error apparent upon the face of the decree, a petition for rehearing or bill of review must be based either upon newly discovered matter as a ground of defense not before known, or for newly discovered proof of a defense known and pleaded, in either case the utmost diligence being required.   If the matter of defense be known before the decree, it can no more be withheld until after the decree than newly discovered proof of a defense known and pleaded. The defendant cannot be permitted to speculate upon the result of the case made by the pleadings and proofs, and thereafter make use of known matter of defense, or newly discovered evidence of the defense already made, coming to his knowledge before publication of the decree.   *Trevelyan* v.

*Lofft,* 83 Va. 141; *Armstead* v. *Bailey,* 83 Va. 242; *Corey* v. *Moore,* 86 Va. 721; *White* v. *Drew,* 9 W. Va. 695; *Hill* v. *Maury,* 21 W. Va. 162. The defendant's answer and all his affidavits and petitions preceding the filing of his bill of review, so far as any reference thereto was made, charged not newly discovered matter of defense, but evidence of a verbal contract of purchase and part payment and possession thereunder — a defense known but not made — reliance being placed upon alleged newly discovered evidence of such verbal contract in the form of letters to third persons; and the proofs taken by him, after lodging his answer in the clerk's office and before affidavit or petition filed to rehear, related solely to the alleged verbal contract. This was not sufficient allegation of newly discovered matter of defense to entitle the defendant to open the original decree of partition. He had been served with process prior to March rules, 1904; the decree was not pronounced until July 25, 1904; nevertheless he stood out and confessed the bill, and interposed no plea of his alleged verbal contract of five years before, under which he claims to have since held possession and made extensive improvements.

Even if we may consider the bill of review, what kind of a case has the defendant presented? This bill of review, as already noted, was not filed to review the decree of July 25, 1904, but the subsequent one of July 19, 1905, which itself was set aside by the decree of July 24, 1905. But if we should apply the bill of review to the previous decree of July 25, 1904, how does the defendant stand? This pleading, contrary to his previous pretensions, pleads a written contract containing alleged terms substantially the same as those of the alleged verbal contract. It is not alleged that a contract in writing was not known to the defendant at the time of the original decree. It is conclusively shown that such written contract had in fact been prepared by his counsel at his instance, long before the decree. What he relies upon is the alleged finding, under the most suspicious circumstances, of this contract in writing. If he knew of the existence of such written contract and relied thereon, it was his duty to have plead it as a defense; or if he relied upon a prior verbal contract (if any) and payment on the price and possession thereunder, the written paper would only be cumulative evidence

and not sufficient to avoid the decree.    Both matters having
been known to the defendant prior to the decree, they could
not be afterwards set up by petition to rehear or bill of review.
*Carter* v. *Allen*, 21 Grat. 241; Sand's Suit in Eq., section
631; 1 Hogg Eq. Pro., section 212; *Sewing Machine Co.* v.
*Dunbar*, 32 W. Va. 336; *Campbell* v. *Campbell*, 22 Grat.
643; *Dingess* v. *Marcum*, 41 W. Va. 757; *Brown* v. *Nutter*,
54 W. Va. 82.

But suppose we disregard the decree of July 25, 1904,
treat the alleged bill of review as in the case and apply it to
the decree of July 19, 1905, which heard the cause upon the
original bill, the answer of the defendant and all the plead-
ings and the depositions then filed; what would be the posi-
tion of the defendant then?    The bill of review and the ac-
companying affidavit show that the alleged contract in writ-
ing was discovered, if at all, at least three days before that
decree was pronounced, and was not presented to the court
until after publication of the decree.    Under the authorities
already cited, it was the duty of the defendant to have brought
the matter to the attention of the court prior to the publica-
tion of the decree, the very purpose of the rule being to pre-
vent fraud and perjury, which is gravely intimated in this
case in the proceedings subsequent to the filing of the bill of
review and in the argument of counsel upon this appeal.
These decisions would prevent the court from entertaining
the bill of review, if otherwise sufficient in substance.    In
*Carter* v. *Allen*, *supra*, it is said:    "Such a bill must not
only set forth the discovery of new matter which was dis-
covered after the decree, but it must be accompanied by an
affidavit that the new matter could not be produced or used
by the party claiming the benefit of it, in the original cause."
A bill of review is not a matter of right, but rests in the
sound discretion of the court.    *Nichols* v. *Nichols*, *supra*.
In *Sewing Machine Co.* v. *Dunbar*, *supra*, it is said:    "If
the party alleges the finding of a document since the decree,
which would have been relevent evidence for him on the
hearing, and knew of its existence and contents, though he
made diligent search for it before the decree without finding
it, yet if he could have proved its existence and contents by
the evidence of witnesses he should have done so, and cannot
on that ground sustain a bill of review;" and that when the

court looking to all the circumstances shall deem it productive of mischief to innocent parties, or from any cause inadvisable, the bill may be refused. In the case at bar the bill seems to have been rejected; it was apparently not heard or considered in the decree appealed from. No issues were made upon it. So far as the defendant is concerned, the case stood on his affidavits, petitions and answer alleging a verbal contract. The alleged contract in writing would hardly have been competent evidence of the alleged verbal contract.

The views here expressed render it unnecessary for us to consider the conflicting evidence respecting either the alleged verbal contract or the contract in writing, both known to the defendant prior to the decree of July 25, 1904. As matters of defense by way of answer or as ground for rehearing upon petition or bill of review, they could not be used. For these reasons, we are of opinion that the decree of the circuit court of December 22, 1905, which disregarded the decree of July 25, 1904, and dismissed the plaintiff's bill, should be reversed, set aside and annulled.

*Reversed.        Remanded.*

POFFENBARGER, JUDGE (*concurring*):

I concur in the decision, but I gravely doubt the soundness of the proposition enunciated by the second point of the syllabus. The *gravamen* of the bill in every partition is the separation or division of the land in ownership and possession. The ascertainment of the state of the title is a mere preliminary step toward the accomplishment of the prime object of the suit. In most instances there is no controversy over the title and the only issue is the allotment of the land among its acknowledged owners. When there is a controversy as to title, the case presents an additional issue. Instead of one issue, there are then two or more, and the rule is that a decree is not appealable as one settling the principles of a cause, if it has not settled all the issues raised by the pleadings. *Hill* v. *Cronan*, 56 W. Va. 174; *Wood* v. *Harmison*, 41 W. Va. 376.