ARTHUR BELCHER *et al.* v. HIRAM TOLLIVER *et al.*

(No. 7033)

Submitted September 15, 1931. Decided September 22, 1931.

*J. Albert Toler*, for appellants.
*Grover C. Worrell*, for appelees.

LIVELY, JUDGE:

Arthur Belcher and H. R. Ballard, plaintiffs below, complain of a decree of the circuit court of Wyoming County, entered April 20, 1931, dismissing plaintiffs' bill.

Complainants, together with A. F. Dixon, filed their bill of complaint at April, 1928, Rules, alleging that Hiram Tolliver was the owner of a tract of land, containing 77 acres, in Barkers Ridge District, Wyoming County, which had been conveyed to him by Thomas W. Godfrey on September 3, 1925; that Tolliver and his wife, Pricy, had, on October 13, 1925, conveyed the tract to a trustee to secure the payment of Hiram Tolliver's indebtedness to A. M. Umpstead; that on June 19, 1926, the land was sold under the provisions of the deed of trust to said Umpstead, who proposed to Tolliver that if he would, within a reasonable time, pay the indebtedness, he (Umpstead) would take no deed from the trustee and would give to Tolliver a deed quitclaiming all his interest in the land by virtue of said trust deed. The bill further alleges that at the time of said sale, Tolliver was heavily indebted, was unable to procure money, and his creditors were pressing him. On or about June 20, 1926, at Tolliver's request plaintiff Belcher lent to Tolliver $250.00 to enable him to pay off Umpstead and redeem the land, for which loan Tolliver, on June 25, 1926, executed his negotiable note, payable to the order of Belcher one day after the date thereof, with interest from said date until paid; that at the time, Tolliver was indebted to plaintiffs and to Huff, Andrews & Thomas Company, named in the bill together with Central Trust Company, receiver, as parties defendant; and that immediately upon procuring the

loan, for the purpose of defrauding his creditors, Tolliver conveyed the property on June 26, 1926, to Mary McKinney, who, on the same day, conveyed the land to Tolliver's wife, Pricy Tolliver. Plaintiffs also allege that each of them had obtained judgments against Hiram Tolliver (as had Huff, Andrews & Thomas Company and Central Trust Company, receiver,); that executions had been issued on each judgment (except that of Central Trust Company, receiver,) and the returns thereon showed no property found. Plaintiffs prayed that the two deeds of June 25, 1926, be set aside; that Hiram Tolliver be declared the true and equitable owner of the land; and that, upon a final hearing of the cause, the land be sold and the proceeds therefrom applied to the payment of judgment liens.

The suit was regularly matured; and on June 3, 1928, defendants Tolliver having made no appearance, the bill was taken for confessed, and a decree, consonant with the prayer of plaintiffs' bill, entered.

On October 19, 1928, defendants were permitted to file their demurrer and answer to plaintiffs' bill. They assign as the reason for their failure to appear that "defendant (Hiram Tolliver) was under the impression" that an attorney was preparing an answer and that he was also "under the impression" that an answer had been filed until he saw the notice of sale, provided for in the decree of June 3rd, published in the newspaper. As a basis of defense to the suit, defendants set up a resulting trust in the wife (Pricy Tolliver) in this manner: Pricy Tolliver in 1893 acquired from her father a tract of land, which tract was sold in 1918 for $1200 cash, which money was re-invested in the tract of land in controversy. (This fact is controverted in plaintiffs' replication, their claim being that the money used for the purchase of the Godfrey land was obtained by sale of certain lots in Mullens owned jointly by defendants; and in the testimony taken, Pricy Tolliver testifies that the $1200 obtained from sale of her father's property had been used to buy the Mullens lots, title to which had been jointly taken by defendants.) Defendants further answer that title to the Godfrey land was inadvertently taken by Hiram Tolliver, whereas it should have been taken in

Pricy's name, and that the deeds of June 25, 1926, from Tolliver to Mary McKinney and by the latter to Pricy Tolliver were executed to effect the true intent of defendants, who deny all charges that the said conveyances were made to defraud Hiram Tolliver's creditors. Upon consideration of this unverified statement the court set aside its former final decree of June 3, 1928, and enjoined the sale of the land. Plaintiffs demurred to defendants' answer because the answer had not been filed until after a final decree.

On April 20, 1931, the lower court dismissed the bill as to all creditors except A. F. Dixon (whose judgment had been obtained against both Hiram and Pricy Tolliver) and decreed Pricy Tolliver to hold the legal and equitable title to the land, free of all liens except the Dixon judgment which had been paid prior to the decree, and dismissed plaintiffs' bill.

Complainants say that the court erred in permitting defendants' demurrer and answer to be filed after a final decree had been entered on June 3, 1928. The question, therefore, arises, may a final decree on a bill taken for confessed be set aside at a time subsequent to the adjournment of the term at which the decree is entered, and if so, what is the proper procedure for that purpose?

A decree, may, on motion, be set aside for good cause shown at any time during the term at which it was rendered, for all proceedings are said then to be in the breast of the court. But when the term ends, the decree assumes an irrevocable character, and the conscionable control of the court no longer obtains. Were this not so, there would be no finality to litigation, and diligence in the prosecution of suits would be penalized to serve the derelict. ''The law does not provide methods of relief for delinquent defendants; if exacts rigid compliance with the rules provided for avoiding a decree.'' *Richmond* v. *Richmond*, 62 W. Va. 206, 218. Where there is a judgment by default, or a decree on a bill taken for confessed, chapter 134, section 5, provides that the court may, on motion, reverse the judgment or decree for any error for which an appellate court might reverse it; but this applies only when the alleged error appears on the record, and cannot avail to open the cause to let in a defense not in issue and litigated. *Bell* v. *List*, 6 W.

Va. 469; *Hornor* v. *Life Admr.*, 76 W. Va. 231. Unless the movant's assignment of error be one which falls within the purview of the statute, he must in some manner attack the decree by original proceedings if he would set aside the solemn order of the court. *Piano Co.* v. *Burgner*, 89 W. Va. 475, 479. The decree may be attacked by a bill of review (*Richmond* v *Richmond, supra*); by a bill to impeach the decree for fraud (*Law* v. *Law*, 55 W. Va. 4); and the Virginia court has held that if it be a final decree by default and relief cannot be given by either a bill of review or by a bill to impeach for fraud, the final decree may be set aside by bill or petition showing good cause. *Erwin* v. *Vint*, 6 Munf. 267. In either form, it is an original proceeding designed to attack the decree. *Hill* v. *Bowyer*, 18 Gratt. 364. That appellees did not contemplate their pleading to be used as an original proceeding is apparent, for there is no mention made therein of the final decree. Counsel for appellees contend that the pleading filed on October 19, 1928, is an injunction bill in the nature of a bill of review. The proper function of a bill of review is to correct errors apparent on the record or to show newly discovered matter arising after the decree of which the party was ignorant and which he could not have known by the exercise of reasonable diligence; but it cannot be used to set up defenses as to any matter so decided or concluded by the final decree. The rule, early stated by this court in *Crim* v. *Davisson*, 6 W. Va. 465, is: ''After a final decree has been made in a cause, it is error, at a subsequent term, to allow a party to file an answer, and thereupon to open up the proceedings, to set aside and reverse the former decree, and to hear and determine the cause *de novo*.''

Even though the answer might be considered as attacking the default decree (although the decree is not mentioned therein), the pleading, by whatever name called, was demurrable because there is no good ground alleged in it on which the decree could be set aside. The ''impression'' of Hiram Tolliver, one of the defendants, that an attorney was preparing an answer for him is too vague and uncertain. It is not a direct averment that he had employed counsel to make a defense.

Moreover, the pleading is not sworn to nor is it supported by affidavit of the supposed employed attorney.

Being of the opinion that the demurrer to defendants' answer should have been sustained, we reverse the decree of the lowr court, set aside the decrees of October 19, 1928, and April 20, 1931, re-instate the decree of June 3, 1928, and remand the cause.

*Decree reversed in accordance with opinion.*