# CHARLESTON.

.HILL, *Admr.* v. CRONIN *et al.*

Submitted June 14, 1904—Decided November 15, 1904.

1. FINAL DECREE—*Chancery Cause.*

A decree in chancery cause, such as will support an appeal, is not necessarily the last decree rendered, by which all proceedings in the cause are terminated, and nothing is left open for the future judgment or action of the court; but it is a decree which determines the substantial merits of the controversy,—all the requisites of the case,—though there may remain a reference to be had, or the adjustment of some incidental or dependent matter. (p. 179).

2. SYLLABUS APPROVED.

Point one in Syllabus of *Wood* v. *Harmison,* 41 W. Va. 376, approved and applied. (p. 179).

3. APPEAL—*Judge—Order of Reference.*

An order of reference, founded on the expressed opinion of the judge, not followed by the sentence of the law thereon, is not appealable. (p. 182).

Appeal from Circuit Court, Ritchie County.

Bill by B. F. Hill, sheriff, against J. B. Cronin and others. Decree for plaintiff, and defendants appeal.

*Dismissed.*

DUTY & FIDLER, for appellants.

H. ADAMS, H. B WOODS, and M. L. BARRON, for appellee.

MILLER, JUDGE:

The first question which confronts us, is one of jurisdiction. Have we the right to hear and determine the alleged errors of the circuit court, appearing in the record? Is the decree complained of an appealable decree? Code, chapter 135, section 1,

gives the right to an appeal for error in a case where the matter in controversy, exclusive of costs, is of greater value or amount than. one hundred dollars, wherein there is a final decree or order; or, in any case in chancery, wherein there is a decree or order, adjudicating the principles of the cause.

The courts have given to this language of the statute a certain and definite legal meaning, and, many times, have applied the rules thus established to particular cases. It is suggested that the decree complained of is neither a final decree, nor a decree adjudicating the principles of the cause.

B. F. Hill, sheriff of Ritchie county, and as such, administrator of Andrew Cronin, deceased, filed his bill in equity in the circuit court of that county against J. B. Cronin, A. W. Cronin, Mathias Cronin and John Cronin, defendants, in which he alleges that said Andrew Cronin died intestate, leaving surviving him, Rebecca Cronin, his widow, and the defendants; and other children, his only heirs at law; that said Andrew Cronin was a pensioner of the United States government; that with the proceeds of back pay and pension received by him he bought, for the consideration of $300.00, a tract of fifty acres of land, which was conveyed to him by Jamison and wife, by their deed, bearing date on the 19th day of April, 1886; that on the 29th day of March, 1893, said Andrew Cronin and wife, for the recited consideration of $25.00, and a "life lease reserved on the premises," conveyed said land to his son, said A. W. Cronin; that on the 29th day of November, 1902, said Andrew Cronin, for the consideration of three hundred dollars, bought a tract of fifty-four acres of land of one Cain and wife, which was, by Cronin's direction, conveyed by them to his son, J. B. Cronin; that on the 1st day of October, 1894, said Andrew Cronin, for the consideration of three hundred dollars, bought of said Cain, and took from him a conveyance for another tract of fifty-four and three-fourths acres, which said Andrew Cronin and wife.in 1895, conveyed to J. B. Cronin; and that in 1902, the said A. W. Cronin exchanged his said fifty acres with said J. B. Cronin for said two tracts of fifty-four and fifty-four and three-fourths acres, respectively.

Plaintiff, on information and belief,. charges that the said A. W. and J. B. Cronin, in consideration of the conveyances to them as above stated, agreed to, and with the said Andrew

Cronin, to keep, support and maintain him, and his said wife, Rebecca, in a comfortable and proper manner, during the remainder of their natural lives.

It is further alleged in the bill that in the year 1897, after the said conveyances had been made as aforesaid, Andrew Cronin was stricken with paralysis, whereby he was rendered mentally incapable of transacting his ordinary busines affairs during the remainder of his life; that at the time he was so stricken, and became mentally incapable of transacting any business, he had,. and possessed, $1,000.00 of pension money, and also horses, cattle, sheep, farming implements and household and kitchen furniture, amounting in value to $800.00; that afterwards his pension was increased by the government to $72.00 per month, which he was entitled to receive up to the time of his death, and which, at the time of his death, in June, 1902, amounted to $3,700.00. It is then charged by plaintiff that said A. W. Cronin and J. B. Cronin, disregarded their said contract with their father, to keep, support and maintain him and their mother, in a comfortable and proper manner; and failed to do so; that said A. W. Cronin and J. B. Cronin took advantage of the mental incapacity of their father, and illegally assumed to act, and did illegally act, as his committee; and as such illegal committee, or committee *de son tort,* received and took into their possession the whole of said pension money, and other personal property, belonging to their father which they and each of them have, since that time, wholly failed, neglected and refused to pay over, or account for to plaintiff, as administrator as aforesaid.

The plaintiff further charges that, out of the said money and other personal property so obtained by said A. W. Cronin and J. B. Cronin, the said J. B. Cronin has built a dwelling house upon his said land of the value of $1,500.00; that with the said money, said A. W. Cronin has erected a dwelling house on his said land of the value of $1,000.00; that said A. W. Cronin and J. B. Cronin turned over to defendant Mathias Cronin a portion of said money, so received by them, with which said Mathias Cronin has built a dwelling house of the value of $1,000.00 on lands belonging to him; and that some of said money may have been turned over to said John Cronin.

The bill further alleges that said A. W. Cronin lived with

said Andrew Cronin up to the time of his death, that said J. B. Cronin also lived with his father, almost to the time of his death; that said Andrew Cronin did not dispose of, and could not legally dispose of, said pension money and other personal property by reason of his mental incapacity so to do, and that he was the legal owner thereof at the time of his death; that the said A. W. Cronin and J. B. Cronin illegally, wrongfully and fraudlently converted the whole of said money and other personal property to their own use; that said A. W. Cronin and J. B. Cronin in their own wrong, assuming to act as a committee for said Andrew Cronin, took charge of said money and other property of said Andrew Cronin; and that there exists, in favor of plaintiff and the estate of Andrew Cronin, deceased, the right to charge said lands with the amount of money so expended in the erection of buildings, and the making of other improvements thereon, to the extent of the money belonging to said Andrew Cronin, used thereon, as aforesaid; and to have the amount. of said money so used, declared and decreed a lien on said property.

The bill then prays that, "if necessary, this cause be referred to a master commissioner in chancery of this court to ascertain and report what money and other personal property belonging to the said Andrew Cronin or his estate have been received by the defendants and each of them and how they have disposed of the same; that the plaintiff may have a personal decree against the defendants for the amount so received by them and found to be due the estate of the said decedent; that the same may be decreed to be a charge and lein upon the real estate of the defendants, J. B. Cronin, A. W. Cronin and Mathias Cronin to the extent that the funds belonging to the said decedent or his estate have been used in the erection of dwelling houses and other buildings and making improvements on said real estate, and that the said real estate, or, so much thereof as is necessary, may be sold to satisfy the same; and that plaintiff may have all such other and further relief, both general and special as the nature of the case may require, and the court may see fit to grant."

To the bill, the defendants, J. B. Cronin, A. W. Cronin, Mathias Cronin and John Cronin filed their general demurrer, which was overruled. Whereupon the defendants answered, admitting the allegations of the bill as to said conveyances, but

ᴅenying that their father was ever mentally incapaᴏle of trans-acting business. They aver that all of the money received by ·said Andrew Cronin as a pensioner or otherwise, was in fact ꝛeceived by him personally, and was expended in the manner ᴠdirected by himself; and that, if respondents, or any of them, ·received any part of said money, they received it direct from their father, Andrew Cronin, with instructions, as to what was to be done with the same, and that it was a gift to them to be used as their own. The defendants, A. W. and J. B. Cronin, deny that they acted as committee *de son tort* of their father. Respondents aver that said conveyances of real estate and gifts of personal property were made in consideration of the work of defendants for their father and mother and for their mainte-nance and support, and with the understanding and agreement ꝑbetween the said Andrew Cronin and respondents that whatever personal property should remain at the death of said Andrew ·Cronin should become and be the property of respondents.

Many depositions were taken and filed in the cause, on behalf of both plaintiff and defendants.

Upon the pleadings and proofs, the court made and entered ·the following decree, which is the one appealed from:

"On consideration whereof the court is of opinion that during the remainder of the life from and after the ――― day of No-vember, 1897, the date at which as shown by the proceedings and testimony in this cause, Andrew Cronin was stricken with apo-plexy or paralysis, up until the time of his death he, the said Andrew Cronin was mentally incapable of transacting business ·or disposing of his property and effects, and it is therefore ad-judged, ordered and decreed that from and after the said ――― day of November, 1897, the date of which the said Andrew Cronin was stricken with apoplexy as aforesaid, until the time of his death the said Andrew Cronin was mentally incapable of transacting business or of making any valid or legal disposition of his property and estate.

"And the court is further of opinion that the defendants, J. B. Cronin and A. W. Cronin should be compelled to account to the plaintiff and to the estate of Andrew Cronin, deceased, for the property and estate owned by and belonging to the said An-drew Cronin at the time he was so stricken with apoplexy as aforesaid, and for all moneys and other property received by the

said Andrew Cronin, or by them, or either of them, belonging to the said Andrew Cronin after the date at which the said Andrew Cronin was stricken with apoplexy as aforesaid; against which, however, they are entitled by way of offsets, to credit for keeping, supporting and maintaining the said Andrew Cronin, and any other just claim, if any, which they may have against the estate of the said Andrew Cronin; and that this cause should be referred to a commissioner in chancery of this court.

"It is therefore further adjudged, ordered and decreed that this cause be and it is referred to H. Marsh, one of the master commissioners of this court, who is directed to ascertain and report the following:

*First,* what money and other effects, real and personal, were owned by Andrew Cronin at the time he was stricken with apoplexy on the ——— day of November, 1897, and the value thereof.

*Second,* what money and other property and effects were received by the said Andrew Cronin, or by the said J. B. Cronin and A. W. Cronin, or either of them, belonging to the said Andrew Cronin from and after the date at which the said Andrew Cronin was stricken with apoplexy as aforesaid, the nature and value thereof, and how the said J. B. Cronin and A. W. Cronin have disposed of the same.

*Third,* any just and legal offsets *aginst* the items above directed to be ascertained and reported which the said J. B. Cronin and A. W. Cronin, or either of them may have and for which they may be entitled to credit, either for support and maintenance of the said Andrew Cronin or otherwise.

*Fourth,* any other matter deemed pertinent by the commissioner, or which may be required by any party in interest."

In drawing the distinction between final and interlocutory adjudications, the greatest difficulty has been experienced in cases of decrees in equity. The confusion has been occasioned principally from the peculiar nature of these decisions, and the wide range of means, which chancery possesses, both for informing the mind of the judge, and for acting upon the parties concerned.

In *Walker* v. *Crawford,* 70 Ala. 567, it is held that "a final decree in a chancery cause, such as will support an appeal, is not necessarily the last decree rendered, by which all proceedings

in the cause are terminated, and nothing is left open for the future judgment or action of the court; but it is a decree which determines the substantial merits of the controversy, all the equities of the case, though there may remain a reference to be had, or the adjustment of some incidental or dependent matter."

Black on Judg. Vol. 1, section 41, says: "The difficulty appears to arise in relation to those decrees which, while settling, the general equities of the cause, leave something for future action or determination. And the true rule seems to be, that if that which remains to be done or decided will require the action or consideration of the court before the rights involved in the cause can be fully and finally disposed of, the decree is interlocutory; but it is none the less final if, after settling the equities, it leaves a necessity for some further action or direction of the court in execution of the decree as it stands."

Freeman on Judgments, Vol. 1 4th Ed.) section 22, says: "That, if after a decree has been entered, no further questions can come before the court except such as are necessary to be determined in carrying the decree into effect, the decree is final; otherwise it is interlocutory."

In *Sturm* v. *Fleming,* 26 W. Va. 54, this Court held that "When a decree appealed from consists in part of an order of reference for a report upon certain specified matters and for such other matters, as the commissioner may deem pertinent or be required by any party, if such order is justified by the pleadings and proofs as to the matters specified, this Court will not, before such report is made and acted upon by the court below, reverse or consider the order, because some party under said general clause may require irrelevant or improper matter to be reported to the court."

In the case of *Desvergers* v. *Parsons,* 60 Fed. Rep. 143, it is held that a decree will be considered as final where the issues raised by the pleadings were all submitted for final adjudication, and, as entered, it shows that the court passed upon and adjudicated all the merits of the case, leaving nothing to be further disposed of except to carry it into effect.

In *Wood* v. *Harmison,* 41 W. Va. 376, it is held that "An interlocutory decree that is appealable as one adjudicating the principles of the cause is one which adjudicates, not some, but all the questions raised in the pleadings or otherwise, and so far

adjudicates that it determines the principles and rules by which relief is to be administered to the parties, so that it is only necessary to apply such principles and rules to the facts in order to decree the relative rights of the parties in the subject matter of the suit." Brannon, Judge, in discussing the clause of the statute, allowing an appeal from a decree adjudicating the principles of the cause, on page 380, says: "Not every decree that adjudicates principles of the cause is ground for appeal. It might warrant one as falling under some specified character giving a right of appeal, as, for instance, that it dissolved or refused to dissolve an injunction, or required money to be paid, or the possession or title of property to be changed, or real estate to be sold; but if coming under no other head, and seeking shelter under the clause quoted, it must still have a certain character, as adjudicating the principles of the cause—not part of them, but all of them, as it was not intended that a dozen decrees, disposing of the matters in controversy by piecemeal, should each be appealed. In *Shirey* v. *Musgrave,* 29 W. Va. 131, (11 S. E. 914), it was held that this statute authorizes an appeal under this clause only when the decree adjudicates all questions raised in the cause by pleading or otherwise, and that, if any one of a number of questions involved is left undetermined, it is not appealable. That case does not settle this case, however. It was not appealable because it left some questions undisposed of, while in this case the question is whether, though the decree does not pass on all the questions in controversy, does it so far pass upon them as to enable us to say that it adjudicates the principles of the case? This decree ascertains no certain debts, decrees none against the property, sells no property, settles no accounts of administrators, but leaves those matters for the future, upon the return of the commissioner's report. Clearly, that deprives it of the character of a final decree; but does it still sufficiently decide the principles involved in the case to call for an appeal? I think it does, because it holds the conveyance to Mrs. Harmison from her husband void as to creditors with debts established by the record, and holds the land liable in her hands to their payment. The cardinal questions in the suit are whether the deeds are void as to certain debts, and the land liable therefor, and whether Mrs. Harmison is personally liable, and they are adjudicated, and all other matters are but subsid-

iary or sequential to those matters. It only remains to apply the principles so adjudicated, and the case is ended. The decree lays out the way for further adjudication." See also Hogg's Eq. Proc. 648, *et seq.; Hill* v. *Als,* 27 W. Va. 215.

The decree under consideration adjudicates only one question raised by the pleadings. It determines that from and after the ———— day of November, 1897, the date on which said Andrew Cronin was stricken with apoplexy, until the time of his death, he was mentally incapable of transacting business, or of making any valid or legal disposition of his property and estate.

The decree then says that "the court is further of opinion that the defandants, J. B. Cronin and A. W. Cronin, should be compelled to account to the plaintiff and to the estate of Andrew Cronin, deceased," etc.; but this is an expression of opinion only, and is not carried into judgment. It is the finding of the court from the facts upon that part of the case, but is not followed by the sentence or order of the court, the conclusion of the law, which would make it binding and obligatory upon the parties.

In *Corley* v. *Corley,* 53 W. Va. 142, 145, JUDGE POFFEN-BARGER, speaking of the requisites of a valid judgment, says: "There must be a declaration by the court of the consequences which the law attaches to the facts in order to deterimne the subject matter of the controversy between the parties. Until there be such declaration, there is no judgment."

In the case of *Ross* v. *Armstrong,* decided by this Court at its last term, it is held that, "an order of reference, founded on the expressed opinion of the judge, without adjudicating the principles involved, is not appealable. Thereupon the Court says: "The expression of the opinion of the Court is not such an adjudication, although an order of reference, properly or improperly, is entered in furtherance of such opinion. The matter is still in the breast of the court, and the judge may change his opinion before entering an appealable decree." *Hanna* v. *Bank,* 52 W. Va. 82, 84; 2 Cyc. 614, 616; 2 Encyc. Pl. & Pr. 62, 65.

One of the questions presented to the court is the liability of A. W. Cronin and J. B. Cronin to the plaintiff; and another is the right to charge the money which went into buildings and other improvements on the lands of said defendants, as a lien on said property, and to declare a resulting trust therefor in

favor of said estate. If the decision of these matters be delayed until the incoming of the commissioner's report, another appeal may follow—a result which the statute was designed to avoid. Besides, if the court should hereafter hold that there is no right in the plaintiff to charge said property with said money so expended thereon, the suit must fail, because plaintiff has a complete and adequate remedy at law. The court had the case before it, with the evidence, on all of the questions involved therein. It was the right of the litigants to have the principles of the cause settled before incurring loss of time and expense before the commissioner. If the case was not properly made out, it was error to direct a reference to a commssioner. In *Bank v. Parsons,* 42 W. Va. 139, it is held that, "An order of reference should not be made solely to enable the parties to take depositions. The cause should be so far developed by the pleadings and proofs as to show the propriety of an order of account, and the extent to which it should go."

In the light of the foregoing cases, we are of opinion that the decree complained of is neither a final decree, nor a decree adjudicating the principles of the cause. The appeal is therefore dismissed as improvidently allowed.

*Dismissed.*