## GULLEGE *v.* WOODS.

[66 South. 536.]

1. CORPORATIONS. *Charter powers. Indorsement of note. Bankruptcy. Fraudulent transfers. Bill for recovery. Sufficiency.*

   A corporation was engaged in a mercantile business with full authority under its charter to conduct such business and to borrow and lend money and receive and execute securities therefor. As a necessary incident to the carrying on of its business, the company could execute and become a party to negotiable paper. This includes the indorsement of a note.

2. BANKRUPTCY. *Fraudulent transfers. Bill for recovery. Sufficiency.*

   A bill by the trustee of a bankrupt corporation which seeks to recover the amount paid by the corporation to the holder of a promissory note, which the corporation had indorsed for accommodation and paid, alleging that the payment was a fraud upon creditors on the ground that it was *ultra vires,* and an illegal diversion of its funds, but does not allege that the holder of the

note knew at the time he received the money in payment of the note, that the company was insolvent, or knew of any act on the part of the company which was a fraud on the rights of the creditors, is insufficient.

APPEAL from the chancery court of Holmes county.
HON. J. F. McCOOL, Chancellor.

Suit by W. R. Gullege, trustee of the estate of Durant Commercial Company, bankrupt, against M. T. Woods. From a decree for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*G. H. Morrough,* for appellant.

The secretary of a corporation has no power to endorse for accommodation under his general authority to endorse bills and notes in the transaction of its business. See *Cent. Bank v. Empire Stone Dress Co.,* 26 Barb. 23; *Genesee Bank* v. *Patchin Bank,* 13 N. Y. 309; also, see other authorities collated with these in 11 L. R. A. 170.

A business corporation for banking, manufacturing, etc., has no power unless expressly conferred, to endorse promissory notes for the accommodation of the makers for a consideration. See *Nat. Park Bank* v. *Ger.-Amer. Mut. Warehouse Co.,* 5 L. R. A. 673. One who deals with the officers or agents of a corporation is bound to know their powers and the extent of their authority; the corporation is only bound by their acts and contracts which are within the scope of their authority. See *Zabriskie* v. *Cleveland, C. & C. R. Co.* (U. S.), 16 L. Ed. 497; *Pearcem* v. *Madison & I. R. Co.* (U. S.), 16 L. Ed. 184; *Salem Bank* v. *Gloucester Bank,* 17 Mass. 1; *The Floyd Acceptances* (U. S.), 19 L. Ed. 173; *United States* v. *City Bank* (U. S.), 16 L. Ed. 133. It cannot be presumed that the agent of a corporation had authority to transact business which the corporation itself was not by its charter authorized to engage in. See *Alexander* v. *Cauldwell,* 83 N. Y. 480; *Chicago & N. W. R. Co.* v. *James,* 22 Wis. 194. The party claiming under the contract must show it to

be within the powers of the officer alleged to have made it. See *Farmers Bank* v. *McKee*, 2 Pa. 318. See, also, on the proposition of inability to bind a corporation on an accommodation endorsement even for a consideration, the authorities collated by the court in the above *National Park Bank* case in 5 L. R. A. 676.

The facts set forth in connection with the transaction as outlined in the pleadings herein were sufficient to have put the payee, Woods, upon notice or inquiry that the endorsement of Durant Commercial Company was an accommodation endorsement purely. See *Bloom* v. *Helm*, 53 Miss. 21; and Danniel, Negotiable Instruments (2d Ed.), 297, sec. 365.

In the case of *Brill Company* v. *Norton & Taunton Street Railway Co.*,——L. R. A. (N. S.) 525, that one who takes, in payment of equipment furnished to a contractor for the construction of a street railway, notes made by and payable to the contractor itself, containing the indorsement of the company for which the maker is performing work, is, in the absence of evidence that the debt is in fact that of the indorser, chargeable with knowledge that the indorsement is merely for accommodation, and therefore *ultra vires*. *First Nat. Bank* v. *Winchester* (Ala.), 24 So. 351; *Steiner et al. v. Steiner Land & Lbr. Co.* (Ala.), 26 So. 494; *Pearce* v. *Madison & Indianapolis Ry. Co., et al.* (U. S.), 16 L. Ed. 184; *West St. Louis Sav. Bank* v. *Parmalee & Shawnee County Bank.* (U. S.), 24 L. Ed. 490.

The fact that the contract was executed as claimed in the demurrer (which we deny) makes no difference. See *Cent. Trans. Co.* v. *Pullman Pal. Car Co.* (U. S.), 35 L. Ed. 55. The case note under this case demonstrates this fact that a corporate act is *ultra vires,* when it is not within the scope of the powers of the corporation to perform it under any circumstances, and that if a corporate act is shown to be *ultra vires* in this sense, the plea of *ultra vires* is available, even to the corporation itself

without regard to the circumstances under which the alleged performance took place. Where a lease made by a corporation is invalid as being *ultra vires* the acceptance of rent by the corporation under such lease will not render it valid. See *Ogdensburgh & L. C. R. Co.* v. *Vermont & C. R. Co.,* 6 Thomp. & C. 488. The doubts with regard to the authority granted in a corporate charter are to be resolved against the corporation. See *L. & N. R. R. Co.* v. *Commonwealth of Ky.* (U. S.), 40 L. Ed. 849.

Officers of a corporation have no power to authorize the execution of a note as surety for another in respect to a matter having no relation to the corporate business; and a party receiving such note with notice cannot recover on it. See *Hall* v. *Auburn Turnpike Co.* (Cal.), 87 Am. Dec. 75.

*J. Wiener,* for appellee.

An examination of this charter, here respectfully referred to in the record, will reveal a large scope of power (see particularly section III of the charter), and a wide latitude for various commercial and industrial transactions and pursuits granted this corporation. It was among other things empowered: "To acquire and to sell real estate, and sell and convey the same, under its corporate seal and the signature of the presiding officer; to buy and sell real estate and personal property; to conduct a general mercantile business to carry on farming operation; to borrow and lend money, and to receive and execute; to do everything necessary or incidental to the purpose for which it was created." Now it is respectfully submitted that the bill in this case in its general aspect is vague, it is constructed of conclusions of law, and so to speak, a "fishing bill" in disguise.

It is respectfully submitted and the law is well settled that, in order to recover this money from M. T. Woods, granting for the sake of argument, that it is recoverable at all, it is necessary for the complainant to allege and

to offer proof that Woods had notice or knowledge of the fact that he was apprised that the transaction between Glines, Woods, and the Durant Commercial Company was not in the course of the latter's business, or "that it in nowise profited by said transaction," or "that it had no interest in said note or the proceeds thereof."

This point is made in the second cause of demurrer, and which cause alone, I respectfully submit, is decisive of the fact of the bill in this case. *Anderson Co.* v. *Hays,* 15 Pickle (Tenn.), 345, 354, 365. *Nat'l Park Bank* v. *Warehouse & Security Co.,* 5 L. R. A. on page 676, a case much relied on by counsel for complainant in the court below, say the court: "Defendant having the general power to bind itself by promissory notes, and contracts of indorsement, the plaintiff is entitled to recover if it is the holder of the notes for value, and without notice that they were indorsed for the accommodation of the maker and not in the usual course of its business."

This corporation, the Durant Commercial Company, as shown by its charter had the power to engage in a great variety of dealings. There is no question that it had the power to make notes and papers, and borrow money, or lend money. Now there are various ways of either borrowing money, or raising money, or of lending money. There are also various ways of signing or indorsing notes, and so far as the signature on the back of the note is concerned it may import either, a mere indorsement or it may thus be written as comaker. In the present instance it will be presumed to be an original promise or that of a joint comaker. Writing the name on the back of the note before delivery makes it the same as an original promise. *Polkingham* v. *Hendricks,* 61 Miss. 366.

That this paper was indorsed by the Durant Commercial Company, before delivery is shown by the very allegation of the bill itself in paragraph 2 thereof. 61 Miss. 366; 1 Daniel, Negotiable Instruments (3d Ed.), page 664, secs. 728, 784.

"A general presumption of right acting attends corporations, the effect of which is to place the burden of proving that the contract made, or act done by a corporation was *ultra vires* upon him who alleges that fact as the foundation of his action or defense." 10 Cyc., page 1155.

The Durant Commercial Company could not have defeated recovery in a suit on this note against it by Woods, and the trustee in bankruptcy has no more right than the bankrupt had. In Mississippi a trustee is not a purchaser for value. 60 Miss. 360; *Paine* v. *Sykes*, 72 Miss. 315; *Craft* v. *Bloom*, 59 Miss, 76; *Richardson* v. *Marqueze*, 59 Miss. 80 and 90.

Where a corporation has a charter to enter into an agreeemnt for a certain purpose, it cannot escape liability by asserting it entered into an agreement for another or different purposes, or authorized purpose unless it proves, and the burden is on it to prove, that the other contracting party was advised of the motive by which it was actuated when the agreement was made. 29 A. & E. Ency. (2 Ed.), page 65, paragraph 7, B. C. & (2); Ibid, page 68. Ibid, pages 66 and 67, 29 A. & E. Ency. Ibid, Note 2, 21 N. Y. Appeal, Div. 204.

Now, then, granting for the sake of argument that the Durant Commercial Company was insolvent on February 23, 1911, it is alleged in the bill that bankruptcy proceedings were not instituted until October 23, 1911, eight months after the payment of this note was made. So then it does not come within the provision of the bankrupt act, which prohibits or avoids payment of debts made within four months of the filing of the petition in bankruptcy and hence is not constructively fraudulent as to this.

On the other hand it is not and never has been unlawful in Mississippi for an insolvent debtor to prefer and pay one *bona fide* indebtedness or one meritorious claim or creditor in preference over another. Such prefer-

ences are not prohibited in Mississippi; there is a long line of judicial opinions to this effect, and our legislatures have never seen fit to legislate otherwise or change this rule of the common law.

No such character of either actual or constructive fraud has been alleged in the bill in this case as would avoid or invalidate this payment. *Craft* v. *Bloom,* 60 Miss. 360; 69 Miss. 69. But it is not necessary to cite authorities on this well-settled proposition. And moreover, pleadings that are vague or general or susceptible of different meanings are always construed most strongly against the pleader.

REED, J., delivered the opinion of the court.

Appellant, trustee in bankruptcy of the estate of Durant Commercial Company, filed a bill in the chancery court to recover from appellee an amount, paid by the commercial company in taking up a promissory note upon which the company was an indorser. The recovery in this case is not based upon the payment being a preference under the bankruptcy law. The note was paid on February 23, 1911, and the adjudication in bankruptcy was not until October 4, 1911. It is averred in the bill that the commercial company "was a corporation chartered for the purpose of carrying on a mercantile business, and without the necessary corporate authority to authorize it to bind itself either as an accommodation indorser, or as an indorser for pay of bills of exchange, or promissory notes or other evidence of debt." The company's charter was made an exhibit to the bill. Therein it was authorized "to buy and sell real estate and personal property, to conduct a general mercantile business, . . . to borrow and lend money, and to receive and execute securties therefor, . . . and generally to do everything necessary or incident to the purpose for which it is created, not inconsistent with the laws of the state of Mississippi." To show the averments in the bill to the

effect that the company was an accommodation indorser and did not have any interest in the note or its proceeds, and did not profit thereby, and that the act of the secretary in making the indorsement was *ultra vires,* we quote the second paragraph of the bill as follows:

"That on, to wit, January 2, 1906, defendant, W. O. Glines, became and was indebted to the defendant, M. T. Woods, in the sum of one thousand dollars, and thereupon executed his promissory note for one thousand dollars, payable to said M. T. Woods, payable one (1) year after date with interest at ten per cent. per annum from date; and Wm. Schild, secretary of said Durant Commercial Company, without any authority so to do either from the directors or stockholders of said corporation, and without any corporate power in said corporation to so do even if it had authorized his said act, indorsed said note in the name of Durant Commercial Company as an accommodation indorser purely, without said Durant Commercial Company in any wise profiting by, or having any interest in said note or the proceeds thereof; and complainant avers that said act of said Wm. Schild was and is *ultra vires,* and that it created no obligation on said Durant Commercial Company whatever."

It is further charged in the bill that the company became insolvent after the making of the note, and that it was so insolvent when the note was paid; that such payment "was a fraud on the rights of the creditors of said corporation, and was void as an illegal diversion of its funds, and rendered the defendant, M. T. Woods, a trustee thereof for the benefit of the creditors of said Durant Commercial Company." The note was made an exhibit to the bill. It is a simple promise of the maker to pay appellee the amount named with interest, and has on it the indorsement of the commercial company. It also contains entries showing the payment of five annual installments of interest. A demurrer to the bill was interposed by appellee, and from the decree of the chan-

cellor sustaining the the demurrer this appeal was granted to settle the principles of the case.

The Durant Commercial Company was engaged in a mercantile business, with full authority under it charter to conduct such business and to borrow and lend money and receive and execute securities therefor. As a necessary incident to the carrying on of its business the company could execute and become a party to negotiable paper. This includes the indorsement of a note.

The right to recover in this case is based upon the *ultra vires* act of the officer of the company in making the company an accommodation indorser on the note in favor of M. T. Woods. It is a general rule that a corporation cannot become an accommodation indorser. It is charged in the bill that the company became a party to the paper as an accommodation indorser.

It will be noted that the contract in this case, which it is claimed is ineffective because *ultra vires,* has been fully executed by the payment of the note. This is not a suit to enforce the contract, to collect the note. It is not a suit by or between the original parties to the paper. In the usual course of business the amount of the note has been paid the holder thereof by one of the parties on the paper. This suit now is brought by, quoting from the bill, "the representative of the creditors." Appellant is therefore acting for the creditors. It has been held:

"That a creditor cannot attack a corporate transaction as *ultra vires* merely; he can assail the act only on the ground that its intent or effect is to fraudulently divert the corporate assets from his debt; he must charge fraud." Thompson on Corporations (2d Ed.), par 2850; *Force* v. *Age-Herald Co.,* 136 Ala. 271, 33 So. 866.

The bill does not charge any fraud on the part of the company or fraudulent misapplication of the funds by its officers, other than the averment that the payment of the note by the company while insolvent was a fraud on the

108 Miss.16

right of its creditors and an illegal diversion of its funds. The bill wholly fails to charge that M. T. Woods, the payee, had any knowledge at the time when he received the money in payment of the note that the company was insolvent. This is not an action against the Durant Commercial Company, the party charged with practicing fraud. It is an action to collect back from the holder of a note the amount paid him by one of the parties thereto in taking up the paper. It is not charged that Mr. Woods was a party in the practicing of the fraud, or that he was actively engaged in the commission of such fraud. So far as the bill discloses, when the money was paid him and the contract became fully executed, he had no knowledge of the insolvency of the company. There is no charge that he knew of any act on the part of the company which "was a fraud on the rights of the creditors . . . and was void as an illegal diversion of its funds." In this consideration we deem it sufficient to decide only that the bill in its averments is inadequate to show that Mr. Wood had knowledge of the facts which it is alleged by appellant constituted a fraud or a fraudulent diversion of the corporate assets.

*Affirmed.*