# CHARLESTON.

J. M. G. BROWN *et al. v.* AMERICAN GÁS COAL COMPANY *et al.*

Submitted February 6, 1924.    Decided February 26, 1924.

1.  APPEAL AND ERROR—*Appeal by Collector of Revenue From Decree in Chancery Will be Treated as Taken by Federal Government.*

    Where in a chancery suit to wind up the affairs of an insolvent corporation, marshal its assets and ascertain its debts in the order of their dignity and priority and distribute its assets accordingly, a final decree is entered fixing the dignity and priority and making recoveries for all the debts, in which is a claim of the federal government for income and excess profits taxes, and which recites: "the court doth adjudge, order and decree that the claim of the collector of internal revenue for the district of West Virginia, for the use of the United States of America, amounting to $38,653.90, constitutes a lien," against certain property; and makes recovery therefor against the debtor; the collector of internal revenue may maintain an appeal therefrom to this court on behalf of the federal government. Looking to substance and not to form, such appeal will be treated as taken by the federal government.   (p. 663).

2.  . SAME—*Decree Winding Up Affairs of Corporation and Marshalling Assets Without Sale Held Appealable.*

    Such decree which ascertains the assets and debts, and makes recoveries of the latter, fixing their dignities and priorities, adjudicates the principles of the cause and is appealable, although no sale of the corporate assets is therein ordered.   (p. 664).

3.  INTERNAL REVENUE—*Grantee Corporation Held Trustee of Assets of Grantor Corporation for Payment of Federal Taxes.*

    Where a corporation, owing taxes to the federal government, which have not ripened into a lien under the federal statute, conveys its corporate assets to another corporation without consideration and later dissolves, the grantee corporation will be treated as a trustee of such assets for the payment of such taxes, and a tax lien afterwards perfected will attach to the property in the hands of the trustee.   (p. 668).

4.  SAME—*Corporation Could Not Escape Payment of Federal Taxes by Execution of Trust Deed.*

    A corporation cannot escape payment of accrued federal income, and excess profits taxes by executing a trust deed cov-

ering its corporate assets to secure payment of a debt of its stockholders incurred in the purchase of its stock from prior stockholders in which purchase the corporation has no direct or indirect interest.  (p. 668).

5.  CORPORATIONS—*Corporation Cannot Pledge its Assets so as to Defeat Payment of Its Just Obligations.*

A corporation cannot become guarantor and pledge its assets for the payment of a debt of its stockholders to third persons wherein it has no interest direct or collateral, and from which it derives no benefit, so as to defeat payment of its own just obligation then in existence.  And a trust deed on its property to secure such debt will not take preference over its own debts upon dissolution, and subsequent winding up of its affairs in chancery.  (p. 668).

6.  INTERNAL REVENUE—*Federal Income and Excess Profits Taxes Held to Have Preference Over Guaranty Debt Secured by Trust Deed of Debtor· Corporation.*

Federal income and excess profits taxes which have accrued at the time of such trust deed made by the corporation will take preference in the distribution of the corporate assets over the guaranty debt secured by the trust deed, as an *ultra vires* act of the corporation.  (p. 667).

Appeal from Circuit Court, Monongalia County.

Suit by J. M. G. Brown and another against the American Gas Coal Company, Albert B. White, United States Collector of Internal Revenue, and others.  Decree for plaintiffs, and defendants Albert B. White and others appeal.

*Reversed in part.   Remanded.*

*T. A. Brown,* U. S. Attorney, *W. C. Grimes,* U. S. Attorney, and *Alvin B. Peterson,* Special Attorney of Bureau of Internal Revenue, for appellants.

*Cox & Baker,* for appellees.

LIVELY, JUDGE:

The controversy on this appeal is over the question of priority of payment of federal income taxes for the year 1920 of Knob Coal Company, a corporation, over a deed of trust executed by that company to secure J. M. G. Brown

and others (all of the former stockholders) in the payment of a balance of purchase money ($175,000), for the stock of Knob Coal Company sold by them to American Gas Coal Company, dated January 3, 1921. The decree gave preference to the debt secured by the trust deed, and the federal government, by its collector of internal revenue, appeals.

Brown and others, on December 14, 1920, owning all the stock of Knob Coal Company, sold said stock to American Gas Coal Company for $300,000, of which sum $125,000 was paid in cash on or before January 3, 1921, and for the remainder, $175,000, four notes each for $43,750, were to be given, payable in four semi-annual payments, with interest, secured by trust deed executed by Knob Coal Company on all of the properties of the Knob Coal Company, the Markley-Dale Coal Company (another company owned by Brown and others, also sold to the American that day), on its property, and by the American company on all of its property. For brevity, the American Gas Coal Company and Knob Coal Company will be called "American company" and "Knob company," respectively. The federal income taxes on the Knob company for the year 1920 amounted in the aggregate to $46,888.75. J. L. Maust and others, from whom Brown and his associates purchased the Knob company, assumed part payment and did pay to Knob company $9,915.02 of this federal tax accrued up to June 15, 1920. The stock of the Knob company transferred to the American company by Brown and his associates was to be free from all lien debts or encumbrances, on January 3, 1921, except notes of Nelson against Knob company for about $12,300; and plaintiffs guaranteed that deferred royalties on the leased lands would not exceed $90,000 including possibly some unpaid purchase money to Wiseman on two of its tracts of land. The income tax was discussed but none of the contracting parties then knew what the exact amount would be; Brown thought it would not exceed $10,000, according to defendants' testimony; and it seems to have been understood that the American would pay the tax, that it would be to its advantage to do so, by making a report consolidated with the report of other companies owned and operated by it. Nothing concerning the amount or payment of the federal tax was in-

corporated in the agreement. On the books of the Knob company there was a balance sheet as of December 20, 1920, which shows, "Reserved for Federal Income tax, $46,-888.75." Brown was president of both the Knob and Markley-Dale companies and the stockholders in each company were the same.

In October, 1921, Brown and the other plaintiffs filed their bill against the American Gas Coal Company, the Knob Coal Company and other corporations whose stock and assets had been purchased by the first named company, and against lien holders on the properties, charging the insolvency of the American company, charging non-payment of the said income taxes for the year 1920, amounting to about $35,000, and praying for ascertainment of the liens and debts against the American company, their dignity and priority, preservation of its assets by receivership, and for sale of its properties in discharge of its indebtedness, and generally to wind up its affairs. The cause was referred to a master, who filed his report in September, 1922, setting out all of the property owned by the American, Markley-Dale and Knob companies, fixing the personal property value at $28,665.74, the real estate of the American at $18,400; and the value of its land acquired from Knob company at $14,690. The claim for federal income taxes against Knob company was ascertained to be $35,166.66 with interest from June 15, 1922, and 5% penalty, amounting in all to $38,653.90, and listed as fourth lien in dignity and priority against the American company; and first in priority against its holdings purchased from Knob company. Exceptions were taken by Brown and the other plaintiffs because the report did not give their trust deed of the 3d day of January, 1921, for $175,000, priority over the federal taxes on all of the properties. Other exceptions by other lien holders of like import were made. The decree of November 27, 1922, sustained the exceptions and gave preference to the deed of trust and various other liens, amounting in all to probably $500,000, over the federal taxes; finds that the American company is not insolvent, and postpones entry of decree of sale. In January following, a decree of sale was entered directing the special commissioner to distribute the proceeds to the creditors in the order form-

erly decreed, after payment of receivers' certificates and costs; and on March 2, 1923, the property was sold to plaintiffs, J. M. G. Brown and Robert Hennen, for $301,600. From the final decree of November 27, 1922, appeal and supersedeas was awarded.

The trust deed to secure Brown and his associates in the payment of the purchase money for the Knob company of $175,000, was executed by American company, Knob and Markley-Dale companies, on January 3, 1921. The notes for this balance of purchase money were given by American company, payable to Brown and the other stockholders of Knob company, appellees herein, in amounts proportionate to their respective stock holdings. On April 14, 1921, Knob company conveyed all of its assets to American company, the deed therefor being recorded June 30, 1921. The deed was made subject to all the lien debts or encumbrances of the Knob company; and appellant asserts that the federal income taxes were then accrued; and that the United States then had an equitable lien upon all of the property for said taxes; and regardless of its lien the United States had priority of payment over Brown's trust deed, out of any monies derived from the specific property so transferred to the American company, the parties thereto and their stockholders having full knowledge of the taxes, payment thereof being assumed by the American.

It appears that notice for the payment of the first deferred installment (1-4) of the income and excess profits tax was given, and on June 1st, 1921, that the second installment must be paid June 15, 1921; and later on February 24, 1922, notice of the lien of the taxes due from Knob company and its successor was filed with the clerk of the District court as required by U. S. Revised Statutes 3186. On July 21, 1921, Knob Coal Company was formally dissolved and went out of corporate existence.

The alleged errors in the decree may be grouped under two heads:

(1) The court erred in decreeing that the American company was solvent;

(2) It erred in not giving the United States preference over other lienors, and especially over the deed of trust of

January 3, 1921, to secure balance of purchase money to Brown and others, in the sale of Knob company stock.

Preliminary questions arise on motion of appellees Brown and others, former stockholders of Knob company, to dismiss the appeal: (1) because Albert B. White, as collector of internal revenue for West Virginia, has no right to prosecute this appeal on behalf of the federal government; and (2) because the decree of November 27, 1922, appealed from, is not final.

By reference to the commissioners' report we find that the claim for income and excess profit taxes is reported as a claim of the United States and filed by A. B. White as internal revenue collector, and amounts to $38,653.90, including penalties and interest. In the decree it is ordered and decreed "that the claim of the collector of internal revenue for the district of West Virginia, for the use of the United States of America, amounting to the sum of $38,653.91, constitutes a lien against that part of the property of the American Gas Coal Company which was conveyed to it by Knob Coal Company, as hereinbefore set forth, next in priority to judgment lien of Falconer Company," subject to receivers' certificates and costs and liens, before decreed (which latter includes Brown and others as beneficiaries under the deed of trust).

The application for appeal is made by Albert B. White, United States collector of internal revenue for the district of West Virginia, who sues for the use and benefit of the United States of America.

It is clear that the United States is the claimant and became a party by appearing before the commissioner and filing its claim through its internal revenue collector who is charged with the collection of all such claims. It is the real party although the decree is in favor of its agent for the use of the United States. We can see no substantial reason why the appeal should be dismissed on this technicality. The real party, the United States, proceeding through its proper officer appointed for the purpose of asserting and collecting its income and excess profits taxes, will be bound by the result; and a court of equity will always look to sub-

stance and not to form. On the second point, it is apparent that the decree of November 27, 1922, appealed from is a final decree ascertaining all of the assets and adjudicating the rights and priorities of the parties, and that the subsequent decrees of sale and distribution in accordance with the de-cree fixing amounts and priorities, simply carry into effect the former decree and make no change in the status of the the parties. The decree of sale and distribution is dependent upon and ancillary to the final decree adjudicating the principles of the cause and the rights of the parties. *Richmond* v. *Richmond*, 62 W. Va. 206; *Hill* v. *Cronin*, 56 W. Va. 174; 49 S. E. 132.

Appellant asserts that the record discloses that the principal defendant, the American Gas Coal Company, was insolvent at the time the decree was entered, although the decree adjudicates that it was not. Appellees, Brown and his associates say this company was not insolvent. They charge, however, in their bill, that it was insolvent and totally unable to meet its obligations by reason of its insolvency. The bill sets out many obligations due and to become due, which the defendant company cannot pay, and says its assets are not sufficient to pay all of its debts and that its insolvency was occasioned by sharp decline in the market value of its property and by mismanagement of its affairs. Receivers were appointed at their instance to preserve the assets from dissipation and forced sale under execution. The answer admits that defendant company is unable to pay its pressing obligations, but says that if certain sales of stocks and properties to it be set aside and annulled and the money paid thereunder be returned (a relief which it asks) it will be able to pay off and discharge all of its indebtedness. The court did grant this relief prayed for in the cross bill answer. The commissioner reported the value of defendant's personal and real property at $61,665.74. This was the as-sessed value, and we find no evidence of the actual value. The issue of incolvency seems to have been overlooked, or at least not well developed. The indebtedness reported was in excess of $574,000. The property in its entirety sold under a subsequent decree for $301,600, leaving debts of over a quarter of a million dollars unprovided for. The commis-

sioner reported that the assets were insufficient to pay the
debts and that the property would not rent for a sufficient
sum to pay the liens within five years, after applying the
personal property to their payment. We think there are suf-
ficient facts in this record to clearly show that defendant
company was hopelessly insolvent as charged in plaintiffs'
bill. *Davis, Director General* v. *Pullen,* 277 Fed. 650; *Wolf*
v. *McGugin,* 37 W. Va. 552. But appellees say that even if
the court was in error in so finding, it would have no effect
upon their trust deed lien of January 3, 1921, executed at a
time when it was solvent. Under sec. 3466 of the U. S.
Revised Statutes (Barnes' Fed. Code, sec. 5669), whenever
any person indebted to the United States is insolvent, the
debts due the United States shall be first satisfied.

The insolvency of American Gas Coal Company is suf-
ficiently established by this suit resulting in the appoint-
ment of official assignees, the receivers, to set this federal
statute in motion. The real estate and much of the physical
assets of Knob company are yet in existence. The title only
changed by voluntary conveyance to the American company
in April, 1921. Afterwards, on July 7, 1921, Knob com-
pany was dissolved and went out of corporate existence. Its
obligation, the federal income tax, was assumed by the Amer-
ican company when it purchased the entire stock on Janu-
ary 3, 1921, and the property and assets cannot escape the
debt by transfer to another. *Finance Co.* v. *Window Glass
Co.,* 86 W. Va. 322.

It is very well established that sec. 3466, Revised Statutes
U. S. does not create a preference in favor of the govern-
ment in case of insolvency of the debtor, over any *bona fide*
lien, general or specific, existing before the insolvency oc-
curred. *U. S.* v. *Fisher,* 2 Cranch 202; *U. S.* v. *Hooe,* 3
Cranch 73; *Brent* v. *Bank,* 10 Peters, 596; *Conard* v. *Atlantic
Ins. Co.,* 1 Peters 386; and *Savings & Loan* v. *Multnomah
County,* 169 U. S. 421. On these and other cases of like prin-
ciple appellees rely to defeat the preference of appellant in
the distribution of the assets of the American company. It
is pointed out that the trust lien in favor of appellees was
given in January, 1921, upon all the property of the Amer-
ican company to secure a *bona fide* debt for the purchase of

stock of a prosperous corporation, the Knob company. That contention may be well taken, in so far as the property of the American company at that time is affected. But it must be remembered that the debt here sought to be asserted is against the Knob company whose assets were absorbed by the American. The property of the Knob company could not be withdrawn or absorbed in that way to defeat the taxes then accrued against it. No valid lien on the Knob company's property and assets as against its taxes could be created in that way. The debt of the American company incurred in the purchase of the stock from Brown and his associate appellees, was not a debt of the Knob company and as a corporation it was not concerned therein and derived no benefit therefrom. The trust deed on its property was without consideration to it, was voluntary on its part and fraudulent in law in so far as it affected the rights of its then *bona fide* creditors. A corporation cannot mortgage its assets to secure a debt of its stockholders to the prejudice of its creditors. It must be just before it is generous. The principle is well stated in Morawetz on Corporations (2nd ed.) sec. 992: ''A corporation cannot indirectly deprive its creditors of the security to which they are justly entitled by executing certificates of indebtedness or a mortgage on its property to persons from whom it has not received a valuable consideration in return. The holders of the securities so issued would not be entitled to share with the bona fide creditors in a distribution of the company's assets, even although their claims be valid as against the corporation by reason of the unanimous consent of its shareholders. They would only be entitled to payment out of a surplus remaining after the bona fide creditors have been paid.'' *In re Prospect Worsted Mills,* 126 Fed. 1011. ''A mortgage conveying the real estate of a mercantile corporation as security for notes given in payment of its own stock purchased either by the corporation or by its president, is *ultra vires* and void.'' *Hunter* v. *Garanflo,* 246 Mo. 131. ''While a corporation may bind itself as surety or guarantor to perform a contract, made for its benefit or in the furtherance of an object within its corporate powers and purposes, it cannot bind itself for the payment of debts owing by its stock-

holders to third parties, wherein it had no interest, either direct or collateral, against which guaranty it may properly plead the defense of *ultra vires.*" *First Savings & Trust Co.* v. *Romadka,* 216 Fed. 113; Fletcher Cyc. Corp. vol. 2, sec. 924. "A manufacturing corporation cannot lend its credit by accommodation endorsement, or contract of suretyship or guaranty." *Haupt* v. *Vint,* 68 W. Va. 657.

Whether this trust deed is good as between the parties thereto and will bind them it is not material to inquire. Appellant asserts that his debt, reduced to a lien on July 21, 1921, when the demand for payment was made, the tax assessment having been received later by the collector, is superior to the alleged trust lien and is entitled to preference. In this way the *ultra vires* act of Knob company is challenged. A creditor may impeach an *ultra vires* contract of a corporation which has the effect of fraudulently diverting the corporate assets from his debt. *Force* v. *Age-Herald Co.,* 136 Ala. 271; *Gullege* v. *Woods,* 108 Miss. 233; *Washington Mill Co.* v. *Sprague Lumber Co.,* 19 Wash. 165. Much is said in the briefs as to when a lien was obtained against the corporate property in favor of the government, and it is insisted by appellees that the debt was a simple obligation which had accrued at the time of the trust deed, but which was not reduced to a lien as provided by sec. 3186 Revised Statutes U. S. until long after their trust deed had been executed and recorded. We do not regard the date at which the government perfected its lien as material. Appellees never had a valid lien as against the income taxes of Knob company. Taxes are not debts, they are not founded on contract, but stand on a higher plane. They are "charges imposed upon the taxpayers, *in invitum* by the exercises of the sovereign power of the state." *Hinchman* v. *Morris,* 29 W. Va. 673. See *Lane County* v. *Oregon,* 7 Wall. 71; *U. S.* v. *McHatton,* 266 Fed. 602. Revised Statutes U S. sec. 3186 provides that if after demand the taxpayer refuses or neglects to pay, the tax shall become a lien, from the time when the assessment list was received by the collector, upon all property and rights belonging to such taxpayer; but it shall not be valid as against any mortgagee, purchaser or judgment creditor until notice of such lien shall be filed by the Col-

lector in the office of the clerk of the district court of the district within which the property subject to such lien is situated. This particular remedy by way of lien is, not exclusive and the government may proceed as at common law. *Dollar Savings Bank* v. *U. S.* 19 Wall. 227. The gratuitous transfer of the assets of the Knob company to American company, in April, 1921, and the dissolution of the former did not extinguish its liability for taxes, and the government may pursue its assets in a court of equity into the hands of any person who is not a bona fide purchaser for value. The holder is regarded as a trustee for the payment of the taxes. The sale of the entire capital stock and distribution of its proceeds will not prevent the creditors from pursuing the proceeds into the hands of the stockholders if their debts remain unpaid; and this remedy may be likewise pursued by the government for its taxes. *U. S.* v. *Capital City Dairy Co.*, 252 Fed. 900. Appellees as well as the American company well knew of the existence of these taxes at the time of the sale and purchase of the capital stock of the Knob company and execution of the deed of trust. It was considered by them at the time of purchase; and while the stock was transferred free of liens, debts and encumbrances as of January 3, 1921, the purchaser agreed to pay these taxes, which, it asserts in its answer, were estimated not to exceed $10,000, but which afterwards turned out to be approximately $38,-000. We do not think the appellees could escape liability for and take precedence over these taxes by selling the stock and securing payment therefor by deed of trust on the assets of the corporation. They are in a court of equity. By this method stockholders could defeat payment of income taxes by sale for full or fictitious value, receiving nominal down payment with trust lien on the corporate assets to secure deferred payments, and upon default have receivers appointed, sell the corporate assets and receive the balance of purchase money to the exclusion of taxes, as well as all other unsecured or common debts. It might be innocently done without design of accomplishing this result; but that would not defeat the creditors. Of course, if done with that intent it would be fraudulent in fact and in law.

Cross assignment of error is that the court erred in de-

creeing any sum in favor of appellant because, it is alleged, there was not sufficient proof of the government's claim. We find that appellees in their bill charge that one of the liabilities of American company is the income and excess profit taxes for the year 1920, amounting to about the sum of $35,000. Defendants' answer admits that the federal taxes for 1920 are about the sum of $38,000. January 1st, 1921, and asks for an abatement of the notes then given of the difference between $10,000, which it charges was the amount plaintiffs then represented as the true sum, and the sum of $38,000, which is the approximate amount of the federal income and excess profit taxes of the Knob company for the year 1920. In paragraph 40 of the answer defendants say they are advised and believe that there remains unpaid about $37,000 owing by the Knob company on the 1920 taxes to the federal government. Frank Burke, a public accountant, who audited the books of the American for the special receivers, filed with his deposition before the commissioner a statement from the books of defendant corporation which showed a debt unpaid to the internal revenue collector of $35,166.56, which is the exact amount of the government's claim exclusive of penalty for non-payment, and interest. Witness Shriver swears that the income tax for 1920 was ascertained to be approximately $46,000, after the sale of the stock of Knob company had been completed on January 3, 1921. Witness Ream states that the tax amounted to approximately $48,000. We do not find the income tax report of the Knob company for the year 1920. A statement of what it contains is in brief of counsel for appellant. We think the pleadings and evidence, especially that of auditor Burke, will fully justify the finding of the commissioner that there was due the government the amount decreed.

The report of Commissioner Dille as to the amount of the federal income and excess profits taxes, and its priority in payment over the debt of appellees secured by the trust deed of January 3, 1921, out of the American Gas Coal Company's holdings acquired from the Knob Coal Company, should have been confirmed and the exceptions of appellees thereto by Brown and his associate stock owners secured by

said trust deed, attacking its dignity and priority against such holdings so acquired, should have been overruled.

The decree will be reversed in that respect, and the cause remanded.

*Reversed in part. Remanded.*